RINKLIN v. ACKER et al.

(Supreme Court, Appellate Division, Second Department. March 11, 1908.)

JURY—VOIR DIRE—EXAMINATION.

   In a personal injury action, plaintiff could ask the jurors on their voir dire whether any of them was insured in a specified casualty company, or was a stockholder or interested therein.

Appeal from Municipal Court, Borough of Brooklyn, Third District.

Action by John Rinklin against Charles H. Acker and another. From a judgment for plaintiff, defendants appeal. Affirmed.

Argued before JENKS, HOOKER, RICH, MILLER, and GAYNOR, JJ.

Edward P. Mowton, for appellants.
Alonzo G. McLaughlin, for respondent.

HOOKER, J.  This case was tried before a jury, and the plaintiff's attorney, examining them, asked the jurors this question: "Are any of you gentlemen insured in the Fidelity & Casualty Company?" The defendants' counsel then asked that the case be withdrawn from the jury on the ground that the counsel had asked a question which he knew, or should have known, was incompetent. The court said that it understood such a line of inquiry to be competent. The plaintiff's counsel was allowed to ask the question, and the defendants took an exception. The jurors did not reply. Plaintiff's counsel then asked, "Are any of you gentlemen stockholders in the Fidelity & Casualty Company?" The jurors replied, "No." The plaintiff's counsel then asked, "Is any one of you interested in any way in the Fidelity & Casualty Company?" and the jurors replied, "No." The defendants claim that it was improper for the plaintiff's attorney to ask these questions, for the reason that it was clearly his intent to influence the jurors improperly against the defendants. The plaintiff, however, claims that he had a legal right to inquire of the jurors as he did; and this, irrespective of any purpose that he might have had.

In Cosselmon v. Dunfee, 172 N. Y. 507, 65 N. E. 494, it was held that the question by plaintiff's counsel in the trial of a negligence case, "Do you know whether they (meaning the defendants) carry insurance for accident to their employés?" was highly improper and reprehensible, and that, where the trial court or the Appellate Division is satisfied that the verdict of a jury is influenced by the asking of such a question, it should for that reason set the verdict aside.

In Loughlin v. Brassil, 187 N. Y. 128, 135, 79 N. E. 854, 857, the plaintiff's counsel in a negligence case, during his summing up to the jury, stated:

"There is no evidence that he (the defendant) was insured. Most of these people are. There is no evidence that there was anything of this kind here."

The defendant's counsel excepted to this remark, and asked that a juror be withdrawn; but the application was denied by the court, whereupon the plaintiff's counsel again said to the jury:

"Many people get insured; but there is no evidence of any such thing in this case at all."

The defendant's counsel again excepted to the remark, and the court said:

"There is no evidence, and the jury will pay no attention to it."

The Court of Appeals said:

"It can scarcely be said that the remark was one of thoughtlessness, because it was deliberately repeated in substance after counsel had objected to it. Under such circumstances, the trial court would have been amply justified in correcting much more vigorously than it did the imprudence of counsel, and either the trial court or the Appellate Division would have been quite justified in reversing the judgment."

In these two cases decided by the Court of Appeals the discussion of this question went off on the proposition that plaintiff's counsel had no legal right, in the first to ask the question, or in the second to make the remarks to the jury. It is, of course, true that, if the plaintiff's counsel had had a legal right to ask such questions or make such remarks, another question would have been presented.

In Grant v. National Railway Spring Co., 100 App. Div. 234, 91 N. Y. Supp. 805, the subject of a similar method of examining jurors was discussed. In that case the trial came on and the impaneling of the jury was commenced. Plaintiff's counsel asked the following question:

"Are any of the jurymen interested as agents or stockholders in any insurance company insuring corporations against liability for negligence?"

Defendant's counsel objected to the question. The court said:

"Yes; the case may go over the term, if you ask it."

The counsel for the defendant then asked that the case go over the term on the payment of costs, and the court so ordered. In reversing the order, the Appellate Division in the Fourth Department stated that the question was clearly competent and proper, and therefore, regardless of the motives of counsel, the answer should have been received. The reasoning of the court was that this kind of insurance against loss by employers through recoveries for injuries to their employés has become very general, and innumerable companies and corporations are engaged in this kind of insurance business, and it is not a rare thing for such an insurance company to be interested in negligence actions; and inasmuch as stockholders and employés of such insurance companies would, of course, be objectionable as jurors to plaintiffs in such actions, inquiry may be made, in any case, whether any of the jurors are stockholders or employés of such insurance companies, on the question of the bias of the proposed juror.

The question in the Grant Case was extremely broad, being an inquiry whether the jurors were interested as stockholders or employés of any corporation insuring defendants against loss by reason of negligence actions being sustained against them. The question in this case, however, was much narrower. The jurors were asked, first, whether they were interested in a specified company, namely, the Fidelity & Casualty Company; second, whether they were stockholders in that company; and, lastly, if any of them were interested in any way in that company. The form of the question did not disclose to the proposed jurors that the Fidelity & Casualty Company was an insurance company.

This court has approved the doctrine of the Grant Case in Blair v. McCormack Construction Co. (App. Div.) 107 N. Y. Supp. 750, where we affirmed a judgment in favor of the plaintiff in a negligence case, in which the plaintiff's attorney, examining the proposed jurors, was allowed to ask, over the defendant's objection, whether any of the jurors were stockholders or officers in any casualty insurance company. In that case the plaintiff's attorney

also asked the jurors if any of them were officers or stockholders in the Travelers' Insurance Company. The question was objected to, and the objection sustained, and the jurors, therefore, did not answer it; and the court stated to the jury that mention of this specific company had no bearing on the case, and they should disregard its mention, and not be influenced thereby. The plaintiff excepted to the ruling; but, forasmuch as the plaintiff had the verdict and the defendant appealed from the judgment, the plaintiff's exceptions were not before us for review. The case may therefore in no way be held to have determined the question now at bar.

I confess I can see no valid distinction between a question which embraces all insurance companies and one which refers to but one. The greater includes the less. If in answer to the more general question a juror should answer in the affirmative, no one would deny that the question relating to the specific company would then be material; and, if it may be asked after an affirmative reply to the general question why may not counsel go at once to the specific? Suppose, in the trial of a case against the "A. B." Railroad, counsel should ask the jurors if they were officers of any railroad; no one will doubt that the question is material, for it goes to the matter of bias. It seems to me that it would be perfectly proper for counsel to waive the right to ask in regard to all other railroad companies, and voluntarily limit his inquiry, if he saw fit, to whether the proposed jurors were officers of the "C. D." Railroad.

Our attention has been called to the case of Hoyt v. Davis Manufacturing Company, 112 App. Div. 755, 98 N. Y. Supp. 1031. In that case, while examining the jurors as to their qualification, the plaintiff's counsel asked the following questions:

"Are you interested as agent or stockholder in any insurance company insuring corporations against liability for negligence?"

Objection being made by the defendant, the court said:

"Counsel may ask the question for the purpose of determining whether he would peremptorily challenge the juror or not."

The defendant excepted, and the juror was sworn. The opinion of the court in the Third Department, which it may be remarked was the opinion of a minority of the justices sitting, did not undertake to decide whether the asking of such a question is legal error which calls for the reversal of the judgment. The opinion criticised the conduct of counsel in asking the question, and then said:

"But it should be understood that such questions are dangerous, and, when asked without good reason, may be very unprofitable to the party who asks them."

It was stated, however, that the judgment should be reversed because the verdict was against the evidence and was not fairly sustained by it. It is to be noted that the opinion distinctly says that this question is not decided, and also states that:

"When counsel ask such questions, overreaching the limit, with a hope to gain a benefit from them, it is but fair that he should take the risk; and in a

close case the court may properly consider that such suggestion had the very effect which counsel intended it should have."

The opinion, as I have pointed out, did not hold that counsel there overreached the limit. The opinion expressed in the Grant and the Blair Cases is that he did not reach the limit.

I have examined the questions, presented by the points defendants make, that there was no evidence of negligence and none of the plaintiff's freedom from contributory negligence; but I reach the conclusion that the verdict is supported on both branches of the case, and that the judgment entered thereon should be affirmed, with costs.

JENKS, RICH, and MILLER, JJ., concur.

GAYNOR, J. (concurring). I desire to put my vote on the broad ground that the plaintiff's counsel not only had the right but that it was his duty to ask the jurymen as he did in examining them for the purpose of challenging them whether any of them was a stockholder or interested or insured in the casualty company. The criticisms of counsel for doing the like to be found here and there in the reports of cases must have been wholly inadvertent. Trial judges have been astonished by them and have had to ignore them. What can be the explanation of it having ever entered any lawyer or judge's mind that a plaintiff may not ask jurymen whether they are stockholders in the casualty company in which the defendant is insured? Must he take the risk of a stockholder of such company being sworn as a juror?

And the notion that our jurymen are so lawless or weak or corrupt that if they find out that defendant is insured against damages for accidents they will render a verdict against him when they would not have done so if that fact had been kept from them is so false and so unjust to them that it should not be dignified by discussion. It never arose in the mind of any lawyer or judge who had a considerable or fair experience in the trial courts. The same is true of the motion that if such questions are not asked the jurymen would never know during the trial that the defendant was so insured. It must be humiliating to jurymen to learn that such a low estimate of their intelligence and alertness is entertained anywhere, let alone by judges who review their verdicts on appeal. Every trial judge knows instantly whether the defendant is insured; and I know of no trial judge who is under the vain conceit that while he knows his jurymen do not. In the majority of accident or negligence cases the defendant is insured, and the lawyers who defend the casualty companies, and their entourage and surroundings, are familiar to jurymen as well as to judges. Indeed, jurymen sometimes observe like things when judges do not. The notion that jurymen find verdicts against corporations against the law and the evidence, and simply because they are corporations is also false, degrading and unjust to our jurymen, if not to our trial judges also. It was the fact in this judicial department a few years ago, and I have no doubt it continues to be the fact, that in actions for damages against corporations, over 75 per cent. of the verdicts were for defendants.

No trouble is found with our jurymen except in localities where the officials who make up the jury list fill it with vicious and worthless men instead of with good, industrious and intelligent men.

JENKS, J., concurs.