[Civ. No. 2314.  First Appellate District.—April 26, 1918.]

## ACHILLE ALLOGGI, Administrator, etc., Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), et al., Appellants.

NEGLIGENCE—ACTION FOR DEATH—COLLISION BETWEEN AUTOMOBILE AND RAILROAD TRAIN AT CROSSING—EVIDENCE—ABSENCE OF GATES OR BARRIERS—FAILURE TO OBJECT—APPEAL—MATTER NOT REVIEWABLE.—In an action for the death of a passenger in an automobile which collided with a train of flat cars of a railroad company at a crossing over a spur-track, an assignment of error that the absence of gates or barriers at the crossing where the collision occurred was not evidence of negligence because the company was not the owner of the spur-track, and consequently there was no duty imposed upon it to maintain such barriers, will not be considered on appeal, where no objection was interposed at the trial to such evidence.

ID.—INSTRUCTION—PRESUMPTION.—In such an action, where the jury was instructed that if they found that the track did not belong to the defendant, the defendant was not responsible for the failure to maintain gates, barriers, or flagmen at the crossing, it will be presumed that the jury followed the instruction.

ID.—SHUNTING OF CARS OVER CROSSING WITHOUT WARNING—FAMILIARITY WITH CROSSING IMMATERIAL.—In such an action, where the evidence was susceptible of the construction that the defendant was guilty of negligence in shunting cars over a crossing used by the public, at night, without lights or attendants upon the cars, and without warning, the familiarity of the driver of the automobile with the crossing and his knowledge of its dangerous character, while a factor to be considered in connection with the question of contributory negligence, was in and of itself of no consequence in the determination of the company's negligence in the first instance.

ID.—FAILURE TO STOP AT CERTAIN POINT — EVIDENCE — LACK OF CONTRIBUTORY NEGLIGENCE.—In such an action, the driver of the automobile was not guilty of contributory negligence as a matter of law in attempting to cross without first stopping at a point where he would have had a clear view of approaching danger, where by the evidence it did not appear that by looking and listening he could have seen the cars.

ID.—DUTY TO STOP AND LISTEN AT MOST ADVANTAGEOUS PLACE — INSTRUCTION PROPERLY REFUSED.—In such an action, it was not error to refuse to instruct the jury that it was the duty of the driver of the automobile to stop, look, and listen at the most advantageous place, since all that was required of him was ordinary care.

Id.—Failure to Call Witnesses—Presumption—Instruction.—In such an action, an instruction to the effect that if the defendant failed to call and examine as witnesses the employees whose fault caused or contributed to the accident, such failure created a presumption that the testimony of such witnesses would be unfavorable to the defendant was properly given, they being in court during the trial.

Id.—Failure to Anticipate Negligence—Instruction.—In such an action, an instruction that one is not chargeable with contributory negligence in failing to anticipate the negligence of another, since everyone has the right to presume that others will act in a lawful manner, is erroneous, but harmless, where other instructions were correctly given on the law of contributory negligence.

APPEAL from a judgment of the Superior Court of Santa Clara County. J. R. Welch, Judge.

The facts are stated in the opinion of the court.

Louis Oneal, Chas. J. Heggerty, and James P. Sex, for Appellants.

Bert Schlesinger, and Fry & Jenkins, for Respondent.

LENNON, P. J.—At about 10 o'clock in the evening of September 19, 1913, the plaintiff, Achille Alloggi, and his wife, Leonie Alloggi, while riding in their automobile along San Salvador Street, in the county of Santa Clara, attempted to cross a spur-track leading from the right of way of the Southern Pacific Railroad Company into the yards of the Peninsular Railway Company, and in so doing the automobile which the plaintiff was driving came into collision with one of a train of several flat cars that was being switched by the defendant, the Southern Pacific Railroad Company, across San Salvador Street and into the yards of the Peninsular Railway Company. The collision resulted in the death of the wife of the plaintiff. Plaintiff thereafter sued and recovered a judgment for the sum of ten thousand dollars against defendants. From this judgment and from the order denying a new trial, the defendants appeal.

It is contended that the evidence adduced upon the whole case does not suffice to support the finding of the jury, implied from the verdict that the defendant, the Southern Pacific Railroad Company, was guilty of negligence which approximately

caused the collision. The first point urged in this behalf is that the absence of gates or barriers at the crossing where the collision occurred was not evidence of negligence, because the defendant company was not the owner of the spur-track upon which its cars were being switched and consequently there was no duty imposed upon the defendant company to maintain barriers at this particular crossing. If this point as made was intended to be an assignment of error, the answer to it is that no objection was interposed at the trial to this particular evidence, and moreover the fact that there were no barriers or gates at the crossing where the collision occurred was eliminated from the case and taken from the consideration of the jury by the trial court's instruction (given at the request of the corporation defendant) that if the jury found from the evidence that the spur-track did not belong to the Southern Pacific Company, but was the property of the Peninsular Railway Company, then the Southern Pacific Company could not be held responsible for the failure to maintain gates, barriers, or flagmen at said crossing. The undisputed evidence showed that the Peninsular Railway Company owned the spur-track, and presumably the jury followed the instruction of the court and disregarded the fact of the absence of gates, barriers, etc., at the crossing in question.

It is contended that there was no evidence showing, or tending to show, the absence of bells, signals, or other warning of the approach of the train at the time of and at the point where the collision occurred, and that, even if such evidence existed, the absence of such signals could in no wise have contributed to the accident because of the fact that plaintiff knew of the existence, character, and condition of the crossing. The evidence showed that the spur-track was being used by the defendant corporation in switching its cars; that the crossing in question, which was used by the general public, was very dangerous on account of a sharp curve which obstructed the view and also because of lumber piles on the west side of the track, which, according to the testimony of one witness, were twelve feet high along the roadway and extended along the track two hundred feet or more. Shortly prior to the collision, three flat cars were standing near the crossing. No engine was then attached to these cars. The character of the crossing and the use made of it at the time of the accident are best shown by the testimony of the defendant Foster, the engineer of the de-

fendant company, who, as a witness for the plaintiff, testified:
"I had been employed in the capacity of engineer since July
27, 1913.  On that night I was doing general switching and
was so engaged about 9:30 or 10 o'clock that evening. . . . I
was switching on this spur-track.  Immediately prior to that
we were coming in to pick up three cars on the spur-track.  I
couldn't say how close we come to these flat cars here, I
couldn't see them.  My engine was along in here.  [Indicating
point 'B' on the map on the sharp curve.]  There was four flat
cars connected with my engine.  As I attempted to make the
switch I was looking across to get my signal; I got an 'easy
sign' from Foreman Volkers.  I was working on signals.  I
knew I was going in there and get some cars.  I knew there
were some cars on that spur-track with which I was supposed
to connect and in making that switch it was the intention to
connect with, and couple up, these cars.  Foreman Volkers
gave me the signal to take the switch.  He is the engine fore-
man. . . .  After receiving his signal I came in.  I got an 'easy
come ahead sign,' and then Foreman Volkers was standing
away out and gave me an 'easy come ahead sign' with his lan-
tern.  I was just creeping along and I felt I was striking
something.  Then the foreman gave me a stop sign and I
stopped.  I waited for a few minutes and then he gave me an-
other 'come ahead sign,' and I put my hand on the throttle
and put the steam in the cylinder and just before we started to
move again he gave me an 'emergency stop sign,' to stop before
the engine had got started.  He came back to me and said:
'We hit an automobile down at the crossing, and we killed a
woman and the wheel of the car is right on the woman's body.'
. . . Just before the accident I was coming forward around a
sharp curve.  I did not see Mr. Bunkers at that time.  He
was supposed to be working at the end of the train.  I didn't
see him at that time. . . . I couldn't see Mr. Bunkers because
I was working on the curve at the throttle of my engine.  The
curve was too sharp to enable me to see him.  I had headlights
on the engine, both ends, and I was connected with the rear end
of those four flat cars. . . . I was new on that job at that time
and I hadn't noticed the pile of lumber along this track before
the accident.  After the accident I noticed the lumber pile.
The lumber was piled up some considerable distance along the
track.  I could not and did not see Mr. Bunkers at the time

of the accident and do not know just where he was. I do not know whether the brakes were set on those flat cars.''

The fact that the brakes were not set on the flat cars at the time of the accident is fairly deducible from this and other evidence, and it elsewhere in the evidence affirmatively appears that there was no flagman at the crossing and that there were no brakemen on any of the three flat cars which were being shunted across the track. On the other hand, the evidence is conflicting as to whether a bell was rung, how far the lumber piles extended down between the road and spur-track, whether the cars were standing still or moving, whether or not they had lights on them, and whether or not the moon was sufficiently bright to have shown the position of the cars and revealed the fact of whether they were standing still or moving at, and prior to, the time of the collision. The evidence was, therefore, susceptible of the construction, as the jury evidently found, that the defendants were guilty of negligence in shunting cars over a crossing used by the public, at night, without lights or attendants upon them, and without warning. The familiarity of the plaintiff with the crossing and his knowledge of its dangerous character was a factor to be considered in connection with the question of his contributory negligence, but, in and of itself, it is of no consequence in the determination of the question of the defendant company's negligence in the first instance.

The plaintiff testified that his wife called his attention to the fact that he was approaching the track; that in response he "kicked off the brake" of his automobile, at which time he was about seventy-five or one hundred feet from the track; that he continued toward the track slowly for a distance of about twenty feet, when he stopped his machine; that he looked up and down the track but could see nothing, "the light being so uncertain"; that his wife said, "There is nothing doing here. Go ahead."

He further testified that if he had driven up closer he could have looked farther down the track, and because of this fact it is insisted that this case falls within, and must be governed by, the rule that if the admitted physical facts establish that there was a point where, by looking and listening, plaintiff must have seen the descent of the cars upon him, he was, as a matter of law, guilty of contributory negligence in attempting to cross the tracks of the defendant company without first stopping at

a point where he would have had a clear view of approaching danger. This contention is answered, we think, by a reference to the state of the evidence upon this phase of the case, as to just what was the situation with reference to the physical facts. If the flat cars were disconnected, with no lights upon them and the moonlight was not sufficiently bright to reveal them, then it cannot be said that, by looking and listening, plaintiff must have seen them. And if, as there is some evidence to show, the cars were standing still and disconnected, assuming that there was sufficient light to have seen them, it does not follow that the plaintiff should be required to conjecture or surmise that the cars might suddenly be shunted backward without notice. (*Robinson* v. *Western Pacific R. R. Co.,* 48 Cal. 409; *White* v. *Southern Pac. Co.,* 122 Cal. 305, [54 Pac. 956]; *Chicago Co.* v. *Sharp,* 63 Fed. 532, [11 C. C. A. 337]; *Fort Smith etc. Co.* v. *Pence,* 122 Ark. 611, [182 S. W. 568].)

The court did not err in refusing to instruct the jury that it was the duty of the plaintiff to stop, look, and listen at the most advantageous place. He was not required to look at the *most* advantageous place, for this would be putting upon him the burden of not only knowing the most advantageous point, but also of exercising the highest degree of care, while all that was required of him was ordinary care.

Objection is taken to the court's instruction to the jury to the effect that if the defendant company failed to call and examine as witnesses the employees whose fault caused or contributed to the accident, such failure created a presumption that the testimony of such witnesses would be unfavorable to the corporation defendant. The evidence showed, without dispute, that two of the employees of defendant, Bunkers and Volkers, were charged with the duty of switching; that they were the brakemen in charge of the train; that Volkers was the engine foreman who gave the signal to the engineer to take the switch; that Bunkers' place of duty was at the end of the train, but as previously noted, Foster, the engineer, testified that, although Bunkers was supposed to be at the end of the train when the signal was given, he (Foster) did not know that such was the fact. The character of the train, the condition of the tracks, and the lights, and the location and doings of the various trainmen were peculiarly within the knowledge of Volkers and Bunkers, and, although not called as witnesses, it was stipulated that they were present in court during the

trial of the case. The plaintiff established a *prima facie* case. The defendant offered very little testimony, practically submitting its case on the showing made by plaintiff. This case, therefore, falls within the well-settled rule that "when the evidence tends to prove a material fact which imposes a liability on a party, and he has it in his power to produce evidence which from its very nature must overthrow the case made against him if it is not founded on fact, and he refuses to produce such evidence, the presumption arises that the evidence, if produced, would operate to his prejudice, and support the case of his adversary." (*Bone* v. *Hayes,* 154 Cal. 765, [99 Pac. 175]; Code Civ. Proc., sec. 2061, subd. 7.)

The court gave, at plaintiff's request, an instruction (No. 17), which, among other things, declared that "one is not chargeable with contributory negligence in failing to anticipate the negligence of another, and in not providing against it. Every one has a right to presume that others will act in a lawful and proper manner; consequently the law will not hold it imprudent in a plaintiff to act upon a presumption that the defendant has done or will do his duty." This instruction in the particular quoted, and in so far as it might have been applied to the facts of the case, was error, for "it is not the law of this state that a person approaching a railroad crossing is authorized to assume that the person operating a train will not in any way be negligent in that operation. . . . Such a rule would abrogate the doctrine of contributory negligence in all such cases." (*Hutson* v. *Southern California Ry. Co.,* 150 Cal. 703, [89 Pac. 1093]; *Herbert* v. *Southern Pac. Co.,* 121 Cal. 227, [53 Pac. 651]; *Griffin* v. *San Pedro etc. R. Co.,* 170 Cal. 776, [L. R. A. 1916A, 842, 151 Pac. 282].) We are satisfied, however, from a consideration of the instructions as a whole, that this general instruction did not operate to mislead the jury, for the correct rule relative to contributory negligence was, in several other instructions, stated and restated, and thereby the effect of the erroneous instruction was palliated, if not entirely negatived. Thus, instruction No. 28, given at the request of the defendant, was one of several directed to the point that "One who is approaching a railroad track cannot rely upon the fact that a whistle would be blown or that a bell would be rung, or that lights would be displayed, but he must so approach the track that even though the whistle were not blown or the bell not rung or that no signals were

given, he could stop his vehicle in time to avoid danger." We are not unmindful of the rule that conflicting and contradictory instructions upon a material phase of the case require a reversal where it cannot be ascertained from the record before us which instruction prevailed, or was likely to prevail with the jury. While it is true that the instruction complained of in the present case is erroneous, and in a measure in conflict with several other instructions which correctly stated the rule of law relative to contributory negligence, nevertheless the correct rule of law was so specifically stated and restated to the jury that we feel that the idea in the several correct instructions must have preponderated in the considerations of the jury, and that as a consequence the erroneous instruction neither contributed to, nor controlled, the verdict.

Judgment affirmed.

Flood, J., *pro tem.*, and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 24, 1918.