[Civ. No. 163. Fourth Appellate District.—July 6, 1931.]

SAMUEL HARVEY, Respondent, v. EDYTHE L. ACEVES, Appellant.

Edward J. Kelly for Appellant.

Adam Thompson, Renwick Thompson and Gordon Thompson for Respondent.

BARNARD, P, J.—This is an appeal from a judgment in favor of the plaintiff based upon the verdict of a jury, in an action for damages for personal injuries. The plaintiff was struck by an automobile driven by the defendant, at a street intersection in the city of San Diego, just after he had alighted from a street-car in which he had been a passenger. He had taken but one or two steps away from the street-car toward the curb, when the automobile struck him, knocking him from 10 to 15 feet and seriously injuring him. The automobile proceeded across the street intersection, up over the curb, across the sidewalk and crashed through the front porch of a house, where it came to a stop, approximately 99 feet from where the plaintiff lay.

The first point urged by appellant, as a reason for reversal is that it conclusively appears that the respondent was guilty of contributory negligence. This contention is based in part upon certain statements made by the respondent to the effect that when the door of the car was opened, he got off and was struck when he was taking the second step; that he did not see the automobile driven by appellant at any time before it struck him; that the automobile was going so fast he could not tell much about it; that before he stepped off the street-car he looked toward the rear to see if there were any automobiles approaching; that he saw only one which had stopped behind the car; that he stepped off frontwards; that he looked around to see if there was anything coming before he got off; and that before he got off the street-car and after the door was opened, he looked with his head outside the door but did not see any automobile approaching until he was struck. In addition, appellant relies upon certain testimony to the effect that as she approached the intersection in question, she was traveling parallel to the street-car, about five feet on the right-hand side thereof; that as she approached the intersection the street-car kept on as though no stop was intended, and actually passed over the pedestrian lane before it stopped; that when she first noticed the street-car slowing down its front was about at the prolongation of the nearest curb line

of the cross-street, at which time she was traveling about twelve miles per hour; and that as the street-car passed over the pedestrian path she was driving about opposite the center of the street-car. From this evidence it is argued that respondent either did not look at all or if he did, did not look with sufficient caution. It is further argued that he is presumed to have seen what he could or should have seen; that there is no evidence of excessive speed on the part of appellant; and that the automobile must have been very close to him and plainly visible when he stepped from the street-car. It is earnestly insisted that these facts disclose contributory negligence on the part of the respondent, as a matter of law. In support of this contention appellant cites the following cases: *Lord* v. *Stacy,* 68 Cal. App. 517 [229 Pac. 874]; *Barnett* v. *Atchison, T. & S. F. R. R. Co.,* 99 Cal. App. 310 [278 Pac. 443]; *Koster* v. *Southern Pac. Co.,* 207 Cal. 753 [279 Pac. 788]; *Young* v. *Pacific Elec. R. R. Co.,* 208 Cal. 568 [283 Pac. 61]; *Niosi* v. *Empire Steam Laundry,* 117 Cal. 257 [49 Pac. 185]; *Davis* v. *Breuner Co.,* 167 Cal. 683 [140 Pac. 586]; *Sheldon* v. *James,* 175 Cal. 474 [2 A. L. R. 1493, 166 Pac. 8]. We think, however, that none of these cases are controlling under the facts before us. ▮ Under well-established rules the question of contributory negligence becomes one of law rather than one of fact, only when the facts are undisputed and when they are such that only one conclusion on the issue of plaintiff's negligence can be drawn therefrom by reasonable minds. As was said in the case of *White* v. *Davis,* 103 Cal. App. 531 [284 Pac. 1086, 1091]:

"Where the injured party fails to look at all or looks straight ahead without glancing to either side, or is in a position where he cannot see, or, in other words, where he takes no precaution at all for his safety, it is usually a question for the court. Where he looks but does not see an approaching automobile, or seeing one erroneously misjudges its speed or distance, or for some other reason assumes he could avoid injury to himself, the question is usually one for the jury."

While appellant testified that the street-car had passed its usual stopping place and stopped suddenly near the center of the intersection, when a man swung off the car directly into her path, there was abundant testimony by other wit-

nesses, most of them disinterested, that several passengers had signaled their desire to alight at this street; that the street-car stopped at the usual stopping place in the pedestrian lane; that it came to a stop gradually; that the street-car doors, which were at the front end of the car, were not opened until the car had stopped; and that the plaintiff looked and saw one automobile stopped behind the street-car, but saw no other automobile approaching. The driver of the automobile which had stopped behind the street-car testified that he saw the street-car was stopping and stopped about 10 feet behind it, and that while so stopped, the appellant's car passed him at a rate of speed which he estimated at between 25 and 30 miles an hour. The appellant testified on cross-examination that shortly after the accident she signed a statement in which she said she saw the street-car was going to stop and speeded up to pass it, and that just before she speeded up she was going about 20 miles an hour. There was evidence that her automobile completely tore a porch away from a house, 99 feet beyond the point where the respondent was knocked, leaving the porch column hanging. The evidence is sufficient to show that the intersection is what is known as a blind corner, within the meaning of the Californa Vehicle Act, there being a business building on the corner which interfered with the vision of the appellant, as she approached. As in force at the time of this accident, section 134 of the California Vehicle Act (Stats. 1923, p. 560) read in part as follows:

"In passing any railroad, interurban or street car while passengers are alighting from or boarding the same, vehicles shall be operated or driven on the right-hand side of such cars and at a rate of speed not exceeding ten miles an hour and no portion thereof or of any load thereon shall come within six feet of the running board or steps of such cars, and shall at all times be operated with due care and caution so that the safety of such passengers shall be assured; . . ."

There was evidence that there were no safety zones or police officers or traffic signals at the corner in question. Not only was the evidence sufficient, as admitted by appellant, to show negligence upon her part, but it is of such a

nature as to make the question of contributory negligence on the part of the respondent rather clearly one of fact, and not one of law. The evidence is conflicting. The respondent took some precaution for his own safety. It by no means appears that reasonable minds could only draw the conclusion that the plaintiff was negligent, especially in view of the duty imposed upon the appellant by law, not to pass that intersection at an excessive rate of speed, and in passing the street-car while passengers were alighting therefrom, to operate her automobile "with due care and caution so that the safety of such passengers shall be assured". The evidence warrants the assumption that the appellant, at a rapid rate of speed, passed another automobile the driver of which had observed that the street-car was stopping, and who had stopped 10 feet behind it, and then passed the standing street-car. The inference might reasonably be drawn that when the plaintiff looked and saw the other automobile stopped behind the street-car, the machine driven by the appellant was some distance back, and it may even have been sufficiently to the rear of the street-car to have not been visible. In any event, respondent could reasonably have expected that no other automobile would suddenly come up and pass the automobile he saw standing there, and rapidly pass the street-car while he was alighting therefrom. Under the evidence and the reasonable inferences that could be drawn therefrom, it cannot be said that the plaintiff was guilty of contributory negligence as a matter of law. (See *Mann* v. *Scott,* 180 Cal. 550 [182 Pac. 281] ; *Bolles* v. *Boone,* 66 Cal. App. 238 [225 Pac. 775] ; *Medlin* v. *Spazier,* 23 Cal. App. 242 [137 Pac. 1078] ; *Koehl* v. *Carpenter,* 47 Cal. App. 642 [191 Pac. 43].) Under such circumstances, we think the issue of the contributory negligence of the respondent was properly submitted to the jury.

Appellant also contends that, assuming the issue of contributory negligence was properly left to the jury, the court committed reversible error in instructing the jury as follows:

"You are further instructed that, where contributory negligence is pleaded as a defense to an action, the burden of proof of such contributory negligence, as alleged in this case,—is on the defendant; and contributory negligence cannot be presumed,—but must be proved by the party al-

leging it. Contributory negligence is an affirmative defense to be established by the defendant, and such contributory negligence as alleged by said defendant herein, *must be shown by a preponderance of the evidence to have been the proximate cause of the plaintiff's injury.*"

The portion shown in italics is the part criticised. It is argued that this, in connection with the correct definition of proximate cause given by the court, in effect instructed the jury that in order to sustain her defense of contributory negligence, it was necessary for appellant to establish that the negligence of the plaintiff was the sole and only cause of the injuries of which he complains. While it is admitted that the jury was elsewhere correctly instructed as to the law governing the issue of contributory negligence, it is argued that this does not cure the error for the reason that the instruction complained of is what is known as a "formula" instruction. ■ It is of course true that a formula instruction, that is one intended to be a complete statement of the law upon which the jury may base a verdict, must contain all of the conditions which are necessary to such a verdict (*Douglas* v. *Southern Pac. Co.*, 203 Cal. 390 [264 Pac. 237, 238]). In that case, the instruction complained of left out of consideration the subject of contributory negligence and proximate cause, although the instruction told the jury that its verdict should be in favor of the plaintiff, if they should find certain things to be true. The court held that it was intended as an instruction only upon one branch of the case and did not purport to be a complete statement of the law upon which the plaintiffs might recover. In commenting thereon, the court said: "We are not prepared to say, however, that said instruction was given to or accepted by the jury as a 'formula' instruction". In the case of *Saltzen* v. *Associated Oil Co.*, 198 Cal. 157 [244 Pac. 338, 339], it was claimed that a second instruction upon the subject of burden of proof was contradictory to a prior instruction on the same subject, in connection with contributory negligence. The court said:

"In said first given instruction the court was dealing specifically, expressly, and only with the subject of contributory negligence and the jury could have not misunderstood its plain and explicit terms. In the second of said instructions the subject of contributory negligence was not

mentioned and it is difficult to see how its generalities, however inapt, could have wrought confusion in the minds of the jurors upon that subject. The older rule that injury was to be presumed from error has not obtained in this court since the decision of the case of *Vallejo etc. R. Co.* v. *Reed Orchard Co.*, 169 Cal. 545, 554 [147 Pac. 238], and the cases which the appellant J. D. Saltzen cites as upholding his above contention do not, when examined, sustain it. In the case of *Rathbun* v. *White*, 157 Cal. 248 [107 Pac. 309], there was a specific instruction which was erroneous and highly prejudicial and this court held that the error created thereby would not be cured by a merely general instruction correctly stating the rule but giving it no specific application. The reverse of that situation is presented here, wherein we find that the specific instruction correctly sets forth the rule as to where the burden of showing contributory negligence lies and the utmost that the appellant J. D. Saltzen can claim is that its effect has been destroyed by the later giving of a general instruction which, however erroneous, does not purport to cover the subject to which the correct and specific instruction relates.''

In *Alloggi* v. *Southern Pac. Co.*, 37 Cal. App. 72 [173 Pac. 1117, 1119], the court said: ''We are not unmindful of the rule that conflicting and contributory instructions upon a material phase of the case require a reversal where it cannot be ascertained from the record before us which instruction prevailed, or was likely to prevail with the jury. While it is true that the instruction complained of in the present case is erroneous, and in a measure in conflict with several other instructions which correctly stated the rule of law relative to contributory negligence, nevertheless the correct rule of law was so specifically stated and restated to the jury that we feel that the idea in the several correct instructions must have preponderated in the considerations of the jury, and that as a consequence the erroneous instruction neither contributed to, nor controlled, the verdict.''

In *Squier* v. *Davis Standard Bread Co.*, 181 Cal. 533 [185 Pac. 391, 392], the court said: ''The court, after charging as to the duty of the driver of an overtaking vehicle to sound an audible signal before passing a vehicle proceeding in the same direction and after instructing the jury that if plaintiff was under such a duty and failed to sound his

horn he was guilty of negligence, continued to the effect that if such negligence was found to be 'the proximate cause' of the injury the verdict should be against the plaintiff. Appellants insist that the use of the article 'the' instead of the article 'a' before the words 'proximate cause' constituted reversible error. The sentence containing the objectionable words is immediately preceded by a sentence requiring the jury to determine whether plaintiff's negligence, if any, was 'a proximate cause' of the injuries received by him. Moreover, the jury was elsewhere fully and correctly instructed on the law of contributory negligence. Considering the instructions as a whole, we consider the possibility that the jury could have been misled by the error complained of so remote as to be altogether unworthy of serious consideration.''

In *Straten* v. *Spencer*, 52 Cal. App. 98 [197 Pac. 540, 543], the court said:

''The instructions, as modified, amount to this: that if plaintiff was guilty of negligence and that negligence was the sole cause of the injury, then he could not recover. Of course, that is true, but defendants desired to have the court instruct the jury that, if plaintiff's negligence contributed to and was therefore a proximate cause of the injury, he could not recover. True, the court did not use the definite article, but to declare negligence to be 'proximate cause,' necessarily implies that it is the only proximate cause.

''The question then arises whether this action of the court constituted prejudicial error. The answer manifestly depends upon whether the principle was covered by other instructions.''

██ In applying these rules to the case before us, we are of the opinion that the portion of the instructions which is complained of by appellant, and which is above set forth, cannot be considered a formula instruction, and that the same does not purport to be a complete statement of the law upon which the plaintiff might or might not recover. And that it did not purport to be a complete statement of the law upon the issue raised by the appellant's plea of contributory negligence. It was, in fact, only a portion of the law given upon the subject of contributory negligence and related only to the burden of proof in that regard.

This case is before us upon a bill of exceptions, which sets forth all of the instructions given, in a body, without distinguishing which were separate instructions. Other portions of the instructions which covered the subject of contributory negligence both preceded and followed the portion complained of. Several times before, and at least once following this portion, the court used such language as the following "guilty of negligence directly contributing to his injury", "which negligence proximately contributed to the injury", "that his negligence proximately contributed to the injuries of which he complains", "you are not to concern yourself with the question as to whether the plaintiff's contributory negligence was equal to or greater than or less than that of the defendant's negligence", and "or that the negligence, if any, of Samuel Harvey was in whole or in part the proximate cause of his injury". Upon the question of contributory negligence the court elsewhere instructed the jury as follows:

"You are instructed that when the plaintiff was alighting from the street car upon which he had been riding it was his duty under the law to have looked in the direction in which he intended to move and to have looked in the direction from which motor traffic might ordinarily have been expected to advance, before attempting to cross from the street car to the sidewalk; and if he failed to do so and you find and believe from the evidence herein that by doing so he would have seen the defendant's car and could have stopped and thus avoided injury, then he was guilty of negligence directly contributing to his injury and he cannot recover herein and your verdict must be in favor of the defendant and against the plaintiff notwithstanding the fact, if it be a fact, that the defendant may have been guilty of negligence as charged by the plaintiff."

"You are instructed that if you find that there was negligence on the part of the defendant in the manner in which she drove and operated her automobile, and that the plaintiff was injured, still the defendant is not liable, if, by using ordinary care, the plaintiff might have avoided the automobile and the collision and the injury. If you find that on the occasion in question the plaintiff did not use ordinary care or was himself guilty of negligence,—which negligence proximately contributed to the injury,—then

the plaintiff cannot recover in this case; that, to entitle the plaintiff to recover damages for the injuries sustained by reason of the accident in question, he must show the injuries to have been proximately attributable to the misconduct of the defendant. In determining either the negligence of the defendant or the contributory negligence of the plaintiff, the test is: What would an ordinarily prudent man have done under the existing circumstances?''

"You are instructed that the law does not concern itself with the relative degree of negligence of the plaintiff and the defendant. Thus, if you find that the defendant was negligent and that her negligence proximately caused the injury of which the plaintiff complains, and you further find that the plaintiff himself was negligent, and that his negligence proximately contributed to the injuries of which he complains, you are not to concern yourself with the question as to whether the plaintiff's contributory negligence was equal to or greater than or less than that of the defendant's negligence. Contributory negligence is an absolute bar to the plaintiff's recovery regardless of its relative degree.''

"You are further instructed that the law of contributory negligence in the State of California is so well settled that it may be briefly summarized. Contributory negligence is a matter of defense, and the burden of proving it rests upon the defendant. Therefore, it is not incumbent upon the plaintiff to establish affirmatively that Samuel Harvey, the plaintiff herein, was free from negligence. It is incumbent upon the defendant to establish affirmatively the existence of contributory negligence on the part of Samuel Harvey or that the negligence, if any, of Samuel Harvey was in whole or in part the proximate cause of his injury, or that it contributed to his injury. Again, the question of whether or not a party has been guilty of contributory negligence is usually one of fact for the jury's verdict; and it is only where no fact is held in doubt and no deduction or inference other than negligence can be drawn by the jury from the evidence that the court can say, as a matter of law, that contributory negligence is established. Even where the facts are undisputed, if reasonable minds might draw different conclusions upon the question of negligence, the question is one of fact for the jury.''

Not only was the matter complained of covered in these other instructions, but it can also be here said that "the correct rule of law was so specifically stated and restated to the jury" that it would be unreasonable to hold that the verdict arrived at could have been based upon the mistaken use of "the" instead of "a" in the portion of the instruction complained of, especially where it was so surrounded and covered with other correct expressions, as here appears. All of the instructions upon the subject of contributory negligence should be taken together, and so taken, it seems apparent that they could not have misled the jury. It also appears that the portion complained of is, in fact, a general instruction. · Although the court refers to the fact that contributory negligence was pleaded in this case, it is fully apparent that the court was attempting only to give a general instruction upon the subject of burden of proof, in connection with the general subject of contributory negligence. On the other hand, several of the other instructions upon contributory negligence were much more specific, the last, in particular, referring to the plaintiff by name, and specifically telling the jury that if the negligence, if any, of Samuel Harvey was in whole or in part the proximate cause of his injury or if it contributed to his injury, he could not recover. In our opinion such express instruction on the very point in issue, so frequently repeated, should not be held to be overcome by such an error as here appears in a more general instruction.

The other point raised by ·appellant is that respondent's claim had been fully compromised and settled by the payment of $100 to him. It appears that the appellant, following the collision out of which this action arose, was arrested and charged with reckless driving in connection with this particular incident. After a plea of not guilty she was tried before a justice of the peace and found guilty. Sentence was deferred until the next day and the justice of the peace, having learned that the family of this respondent was in want, gave the defendant a suspended sentence upon the condition that she should contribute something to the well-being of this respondent's family "for the present time." She was given thirty days within which to pay the sum of $100 for that purpose and, later, that amount was paid in her behalf. Appellant maintains that

this constituted a complete compromise and settlement of respondent's claim, under the terms of sections 1377, 1378, and 1379 of the Penal Code. Our attention is called to the fact that the justice of the peace testified that "the misdemeanor charge was compromised". It is argued that irrespective of any understanding on the part of this respondent, the justice of the peace, was, in fact, the agent of this respondent and therefore the understanding between the justice of the peace and this appellant is conclusive and binding upon this respondent. And that since the $100 was not returned or tendered prior to the trial of this action, under the authority of *Garcia* v. *California Truck Co.*, 183 Cal. 767 [192 Pac. 708], the respondent herein could not recover. It is conceded that at the time these events took place the justice of the peace did not have these sections of the Penal Code in mind. It is argued that whether he intended to or not, he followed them, and that this constituted a full settlement of the civil claims of this respondent as well. It fully appears from the evidence that these sections of the Penal Code were not complied with, in that the injured party never did appear before the court and did not at any time acknowledge that he had received satisfaction for his injury and nothing was done in the premises before the trial. It also appears that the defendant in the criminal proceeding was not discharged therefrom but was found guilty, and sentence was imposed, and this sentence was suspended upon the condition that the defendant contribute $100 toward the relief of the immediate needs of the family of the injured party. Not only did the respondent not agree to accept this money as satisfaction for his injuries, but if it should be conceded that the justice of the peace was acting as his agent, no such agreement appears between such agent and the appellant. By no stretch of the imagination can it be said that there was a meeting of the minds of the parties upon a settlement of respondent's claims. The justice of the peace testified that he was requested by appellant's representative to take the check "out to the Harvey family" and that when he delivered the check "Mr. Harvey asked me if this was in settlement for anything, or had anything to do with any damages. I told him no,—that it was merely a matter that had been worked out in the Police Court to render him some assist-

ance." He further testified that the arrangement between himself and the appellant was that the sentence, either a fine or a jail sentence, would be suspended "on the condition that she afford them some relief". He further testified: "I had in mind that Miss Aceves was civilly liable for the damage done to Harvey. I didn't delve into that, I didn't go into that. I was simply trying to figure out the best way in which the criminal matter could be disposed of." And also: "Just before this check was received by me and paid over, I did not have any conversation with Miss Aceves as to paying it for her in settlement of all claims of any kind with Mr. Harvey. I never saw Miss Aceves from the time that I pronounced the sentence until I met her yesterday in the courtroom. I didn't have any talk with anyone on her behalf that this would be a payment or satisfaction of any damages that might be due Harvey." The respondent testified that when the justice of the peace brought the check to his house "we asked Judge Kelly if receiving this check would, in any way, hurt us, and he says not; that it was intended for our immediate uses. He said he was bringing the check because we were in need of groceries,—something to eat." Respondent's wife testified: "Judge Kelly said the check was for our needs. It was not to settle any claim for damages." The justice of the peace also testified: "The condition of the family was pathetic. Mr. Harvey was unable to carry on a conversation. He seemed to be in a dazed condition. He did not know whether he was going to get well or not. His wife was very much concerned, and the great concern of the family seemed to be whether or not Mr. Harvey was going to get well." He also testified that when he suggested suspending the sentence and this money being paid "The defendant then asked whether or not that would interfere with their collection of the insurance. Mr. Beck, the city prosecutor, said that it in no way involved any settlement." In our opinion these circumstances entirely fail to show any compromise or settlement of the civil action now before us. Nor do we think any return of the money or tender thereof was necessary in order to maintain this action.

Although no such question has been raised by appellant, whether the $100 which was thus paid by another

on her behalf should be credited upon the amount of the judgment, might present a somewhat closer question. However, the evidence sustains the conclusion that the money paid was in the nature of a contribution for the purpose of temporarily relieving a condition of distress. Although it was a forced contribution, it was gladly made in pursuance of another object and purpose which were most important to the defendant in the criminal proceedings. So far as she is concerned, she is actually entitled to no more credit than she would have been, had the contribution been to any form of charity. The paying of the money was more in the nature of doing penance, than a payment upon an obligation. Not having been made for the purpose of covering any of the claims involved herein, the payment is in fact not involved in this action. (See *Dalton* v. *Pacific Elec. Co.*, 7 Cal. App. 510 [94 Pac. 868].) In any event, the entire matter was presented to the jury and appellant not having asked for such a credit and the pleadings not having been called to our attention, it may be assumed, all intendments being in favor of the judgment, that the judgment covers only damages actually shown to have been suffered by the respondent, irrespective of any such payment or donation. Whether or not the action of the justice of the peace in the criminal proceeding was strictly legal is not involved here, although it may be said that the circumstances show that this action had much to commend it.

The judgment is affirmed.

Marks, J., and Griffin, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 27, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal was denied by the Supreme Court on August 31, 1931.