[Civ. No. 482. Fourth Appellate District.—November 30, 1932.]

S. Y. ROBBINS et al., Respondents, v. GEORGE E. ROQUES et al., Appellants.

Edward J. Kelly for Appellants.

Whelan & Whelan for Respondents.

JENNINGS, J.—This action was instituted by plaintiffs, husband and wife, to recover from defendants, husband and wife, damages for personal injuries sustained by said plaintiffs, as a result of a collision that occurred between an automobile which was being driven by defendant, George E. Roques, and a motorcycle upon which both plaintiffs were riding and which was being operated by the male plaintiff, S. Y. Robbins. The evidence which was presented during the trial of the action showed that the plaintiff, Phyllis Robbins, sat on the seat of the motorcycle and that her husband, S. Y. Robbins, sat immediately in front of her partly on the seat and partly on the gas-tank of the vehicle and that Phyllis Robbins had her arms around her husband's waist and was clinging to him. The collision occurred on a road which was stipulated to be a mountain road and in the

vicinity of a curve in said road. Plaintiffs were traveling down grade and defendants were proceeding upgrade in the opposite direction. Plaintiffs had passsed around a curve approximately 200 feet in length immediately prior to the happening of the accident. No signal by horn or otherwise was given by them as they rounded the curve. Plaintiff S. Y. Robbins testified that the motorcycle was driven around the curve at a speed of from 20 to 25 miles per hour. The view of a driver approaching the curve from the direction in which plaintiffs were proceeding is obstructed within a distance of 200 feet. The collision occurred approximately 35 feet below the elbow of the curve and at a point where the road is comparatively straight. The evidence with respect to the speed of defendants' automobile immediately preceding the collision is conflicting as is also the evidence with respect to the exact place in the road where the collision took place with reference to the center line of the road. It was the contention of plaintiffs that the automobile of defendants was being operated at a rate of speed in excess of that permitted by law at the time of the accident and that, at said time, the automobile was partly on its left-hand side of the road. Upon the conclusion of the trial of the various issues of fact presented to the jury selected for the purpose, a verdict was returned in favor of said plaintiffs in the amount of $30,066. From the judgment for such amount rendered in conformity with the verdict, defendants have appealed.

It is conceded that as the evidence with respect to the negligence of defendants in driving the automobile on the wrong side of the highway was conflicting and this issue of fact was resolved in favor of plaintiffs, it may not be disturbed on appeal. The same concession might properly have been made with respect to the speed at which the automobile of defendants was being operated. Complaint is, however, made of numerous errors alleged to have been committed during the course of the trial.

Among the errors of which complaint is made, the giving by the court of contradictory instructions on the issue of contributory negligence of respondents is cited as being highly prejudicial to the rights of appellants. This issue was directly raised by the pleadings and the evidence relating to it which was produced during the trial indicates

that it was one of the principal features of the case. The testimony of respondents themselves shows that in two respects they were guilty of negligence. The two acts of negligence committed by them consisted in the failure to give any signal as they proceeded around the curve and in rounding the curve at a speed in excess of 15 miles per hour, the speed permitted by law on a curve of the character portrayed by the evidence. When it is remembered that the collision beween the vehicles occurred within a short distance from the elbow of this curve, the importance of the issue is at once evident. Upon this issue the court apparently gave a number of instructions. The record herein is presented in the form of a bill of exceptions. All instructions of the court are thereby presented in a single group which renders it impossible to distinguish which were separate instructions. Upon the feature of contributory negligence the court instructed the jury that the burden rested upon respondents to prove by a preponderance of the evidence that appellants were negligent and that such negligence was a proximate cause of the collision and the injuries suffered therefrom by respondents. In the same paragraph of the instructions in which the above-mentioned advice is given the jury was instructed that if respondents had proven by a preponderance of the evidence that appellants were negligent and that such negligence was a proximate cause of the collision respondents were entitled to a verdict unless it had also been established by a preponderance of the evidence that respondents were guilty of negligence which contributed directly or proximately in some manner or degree to the collision. In a number of other paragraphs the jury was properly advised that if it was found from a preponderance of the evidence that respondents were guilty of negligence and that such negligence proximately contributed, in any degree, to their injuries they were not entitled to recover. However, in three different paragraphs of the court's instructions the jury was advised that contributory negligence of the respondents, if it should be found to have been established by a preponderance of the evidence, must, to prevent recovery by respondents, have been shown by a preponderance of the evidence to have been a proximate cause of the collision. It might be observed that two of the last-mentioned paragraphs contain

what may properly be called general instructions. The third paragraph is more specific and is in the following language:

"If you find from the evidence that the injuries of which the plaintiffs complain were suffered in a collision between the automobile of the defendants and the motorcycle of the plaintiffs at the time and place set forth in plaintiffs' complaint; and if a preponderance of the evidence shows that the defendants were guilty of negligence in the operation of their car and that the collision in controversy was the direct and proximate result of said negligence on the part of the defendants, and if you should also find that the plaintiffs were guilty of negligence in the operation of their motorcycle, *but that the negligence of plaintiffs was not a proximate cause of the collision and did not concur with the negligence of the defendants to cause said collision,* then your verdict should be for the plaintiffs, and you should award damages to the plaintiffs, using rules which I will, in these instructions, lay down for your guidance in order to ascertain the amount of said damages." (Italics ours.)

In this paragraph the jury was plainly instructed that respondents were entitled to recover if they had shown by a preponderance of the evidence that appellants were negligent and the collision was the proximate result of such negligence, although it also appeared that respondents were negligent but that their negligence was not a proximate cause of the collision. This is not, therefore, a case of a single incorrect instruction general in character whose effect may fairly be said to be overcome by numerous other instructions more specific, wherein the correct rule is announced. (*Alloggi* v. *Southern Pac. Co.,* 37 Cal. App. 72 [173 Pac. 1117]; *Harvey* v. *Aceves,* 115 Cal. App. 333 [1 Pac. (2d) 1043].) It is rather a case where numerous instructions correctly stating the rule with respect to contributory negligence were given but interspersed among these correct instructions are several which incorrectly advised the jury that contributory negligence must be shown to have been a proximate cause of the collision in order to bar recovery. As heretofore noted, the true rule is that if respondents were negligent and their negligence contributed in any degree to the happening of the accident, respondents may not recover. It is, therefore, impossible to

determine which of the conflicting rules presented to the jury was followed and the error must be deemed to have been prejudicial. (*Rathbun* v. *White*, 157 Cal. 248 [107 Pac. 309] ; *Ogilvie* v. *Aetna Life Ins. Co.,* 189 Cal. 406 [209 Pac. 26, 26 A. L. R. 116].)

Another error which it is contended warrants a reversal of the judgment relates to the verdict of the jury. By the verdict certain sums of money were specified as compensation for certain stated damages suffered by respondents. Among the various items of damages the jury awarded respondent S. Y. Robbins the sum of $5,000 because of the loss of the comfort, society, and *services* of his wife Phyllis Robbins and to respondent Phyllis Robbins the sum of $20,-000 because of her bodily injuries, pain, anxiety, mental anguish, grief, mortification, physical suffering, *loss of earning capacity,* and general damages which she will probably suffer and which can be ascertained with reasonable certainty. It thus appears that one of the elements for which the husband was awarded the sum of $5,000 was the loss of his wife's services. By the court's instructions the jury was advised that, in fixing the amount of damage suffered by the husband, consideration should be given to the detriment occasioned to him by reason of his wife's injuries in the loss of comfort, society, and service of his wife during all the time she was incapacitated after the collision and during all the time that she will be incapacitated in the future. Passing for the present the question raised by appellants that loss of the comfort and society of the wife is not a proper element of damage to be considered by the jury in arriving at a determination of what amount may justly compensate the husband, it must be conceded that loss of the wife's services is a proper element to be taken into consideration by the jury in arriving at such determination and that the wife's services are a part of the earning power of the community, for loss of which damages may be recovered. (*Martin* v. *Southern Pac. Co.,* 130 Cal. 285 [62 Pac. 515].) Likewise, it is well recognized that damages may properly be awarded for loss of earnings. But loss of earnings of the wife and loss of her services, in the final analysis, amount to the same thing. Service is the constant quantity in the equation. If, therefore, the husband is awarded damages because of the loss of his wife's services in

maintaining the home during the time she is rendered incapable of performing such services and she is awarded damages to compensate her for loss of earnings during the same period it requires no unusual discernment to arrive at the conclusion that thereby the community property receives double compensation for the same identical loss. It cannot be discovered in this case what amount of the wife's award was allowed for loss of her earnings nor is it possible to determine what amount of the sum awarded to the husband for loss of comfort, society and services of the wife represents the jury's estimate of proper compensation to be allowed for loss of the wife's services. All that can be known is that compensation to some extent was twice allowed for the same detriment. It is fundamental that, in a case of this character, such damages are allowable as will justly compensate respondents for injuries sustained by them and no more. It is not a case where exemplary damages may be recovered.

██ It is further contended by appellants that the court erred in advising the jury that, in arriving at a determination of the damages to be awarded to the husband it could take into consideration the loss of his wife's society during the time she was incapacitated by reason of her injuries. We have been cited to but one California case in which any mention is made of this element. In *Meek* v. *Pacific Ry. Co.*, 175 Cal. 53, at 56 [164 Pac. 1117, 1118], there is plain *dictum* to the effect that damages are not recoverable by the husband in this state for loss of consortium. The *dictum* is contained in the following passage from the opinion of the court:

"The services rendered by a wife, aside from consideration of her society, or what is termed the consortium, *damages for which are not recoverable in this state,* may be and often are of such character that no witness can say what they are worth." (Italics ours.) In the note in 21 American Law Reports, 1519, it is said that the great weight of authority sustains the husband's right to recover for loss or impairment of his right to the conjugal society and assistance of the wife. However, no California case is cited as sustaining the text. It may fairly be said that it is at least doubtful whether, in an action of the character here considered, damages for loss of consortium of the wife are

recoverable by the husband in this state. However, since we entertain the opinion that the judgment must be reversed for reasons other than the claimed error in advising the jury that it might consider loss of the wife's society as an element of the husband's damage, we deem it unnecessary to give further consideration to the last-mentioned question.

One further contention of appellants deserves consideration. During the examination of prospective jurors on the *voir dire* counsel for respondents propounded to one of such jurors the following interrogation: "Are you interested as a stockholder or otherwise in the Standard Accident Indemnity Insurance Company or any protective, indemnity or accident insurance?" The court permitted the question to be answered over appellants' objection that it was incompetent, irrelevant, and immaterial. Practically the same question was then asked of the jurors collectively and over appellants' objection was permitted to be answered. Shortly thereafter a member of the jury panel was called to the jury-box, presumably to take the place of another who had been examined and excused, and to this prospective juror the court propounded the following interrogation: "Would you render a verdict as readily and no more readily against a corporation insuring in such cases as this, as you would if it were the defendant himself?" Prompt objection on the ground of immateriality was offered by appellants, whereupon the court said: "I will withdraw the question. Consider it has not been asked." It is obvious that the court made the inquiry in the interest of expediting the trial of the action. Nevertheless, the asking of the question was inopportune. The attention of prospective jurors had been directed to the fact that, notwithstanding the suit had been brought against appellants alone, a certain insurance company was interested in the outcome of it. The effect of the court's inquiry was to stress unduly this fact. It is difficult to arrive at the conclusion that the effect produced by the court's inquiry was obviated by his immediate withdrawal of the question and his admonition to consider that it had not been asked or by the fact that the particular juror to whom the inquiry was propounded was peremptorily challenged by respondents and excused. The asking of questions of a nature similar to those hereinabove indicated by counsel for plaintiffs in actions for damages for

personal injuries has been often considered by our courts. In *Arnold* v. *California Portland C. Co.*, 41 Cal. App. 420, 425 [183 Pac. 171, 172], the rule is thus stated:

"Notwithstanding the apparent diversity of the decisions, we think that a correct statement of the rule, supported by reason and the weight of authority, is substantially as follows: It is entirely proper for counsel to ask the jurors such questions as may reasonably be necessary to ascertain whether they are free from a bias or interest that may affect their verdict. To this end it is proper for counsel, in good faith, to ask of each juror whether he is interested as an agent or stockholder or otherwise in a specified casualty company. Or he may be asked the broad question whether he is interested in any insurance company insuring against liability for negligence. (*Rinklin* v. *Acker*, 125 App. Div. 244 [109 N. Y. Supp. 125]; *Grant* v. *National etc. Co.*, 100 App. Div. 234 [91 N. Y. Supp. 805].) But counsel must take pains to propound such questions in such a manner as not unnecessarily to convey the impression that the defendant is in fact so insured. It is misconduct on the part of counsel for plaintiff in such actions so to frame his question that it goes beyond what is reasonably necessary to serve the legitimate purpose of eliciting the facts he is entitled to adduce in order to secure a jury free from bias or prejudice, if it is also apparent that the question may fairly be said to have the effect of serving the illegitimate purpose of prejudicing the jury by fixing in their minds the idea that the defendant is protected by insurance against liability for negligence. And if the amount of the verdict is large as compared with the nature of the injuries sustained, or the defendant's liability is a close question, such misconduct is prejudicial and ground for reversal."

In *Squires* v. *Riff*, 211 Cal. 370 [295 Pac. 517, 519], it is said: "The natural tendency of a line of examination that suggests to the jury that the defendant is indemnified against any judgment for damages against him is highly prejudicial to his rights, especially in a closely balanced case where the evidence otherwise would be easily sufficient on appeal to support a verdict either for the plaintiff or for the defendant." This last-quoted language is peculiarly applicable to the situation presented in the instant case. The record shows that the case is closely balanced and that

the evidence, without considering the various errors of which appellants complain, would easily support a verdict either for respondents or for appellants. Under these circumstances, it is difficult to escape the conclusion that the court's inquiry of a prospective juror on the *voir dire,* as hereinabove set forth, added to the error committed in the giving of contradictory instructions relative to the issue of contributory negligence and the double compensation awarded by the verdict for loss of the wife's services and of her earnings during the time she was incapacitated justifies a new trial of the action.

The judgment is therefore reversed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 23, 1932, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 26, 1933.