[Civ. No. 5071. Third Appellate District.—July 19, 1934.]

JACK FLEMING, Respondent, v. CLARENCE FLICK et al., Appellants.

Len H. Honcy and A. L. Picrovich for Appellants.

T. B. Scott, Gumpert & Mazzera and Snyder & Snyder for Respondent.

THOMPSON, J.—The defendants have appealed from a judgment for damages which was rendered against them for injuries sustained by the plaintiff as the result of an automobile casualty caused by the defendants' machine colliding with the plaintiff's car while it was stalled on the roadside because of a broken axle.

The evidence is conflicting, but the record supports the following statement of facts: At 2 o'clock on the morning of August 24, 1932, the plaintiff was engaged in hauling five head of cattle to a mountain ranch in Placer County. He was driving his Marmon automobile which had been converted into a truck in which he was carrying three cows. Behind the truck there was a trailer containing two other cows. The two vehicles with the combined load weighed 6,000 pounds. The plaintiff had nearly reached the top of a two per cent grade beyond Plymouth when the rear axle of the Marmon car broke, leaving the machine without means of being propelled. The vehicles stopped. The roadway was a trifle less than 23 feet in width at that point and occupied the entire space between embankments on either side. When the axle broke the plaintiff immediately applied the emergency brake and then gradually released it, permitting the vehicles to slowly roll back down the grade. It was impossible to accurately guide the trailer on its downward course. At a point about 200 feet below the top of the grade the trailer ran into the embankment on the western side of the road, breaking the tongue. This predicament prevented any further attempt to reach the bottom of the grade. Both vehicles were effectually stalled close to the western side of the road. There remained, however, a clear space of approximately 15 feet on the other side of the road for passing vehicles.

For fear that some automobile might run into the stalled machines in the night-time, the plaintiff sat in his Marmon car watching until daylight with the headlights burning and a flashlight in hand to be used in case of an emergency. During the night one or two machines arrived and passed without difficulty. At 6 o'clock in the morning the plaintiff walked back to Plymouth, a distance of two miles, to obtain assistance. He found no garage open, but telephoned to Stockton for a Marmon axle with which to replace the broken one. He chanced to meet R. E. McComic at Plymouth, who was driving his Studebaker machine. The plaintiff persuaded McComic to drive him to the scene of the accident to assist in hauling the disabled vehicles to town. They arrived at that point about 8 o'clock A. M. The trailer stood at a slight angle close to the west side of the road with one wheel embedded in the bank. The Marmon car was stationed a

few feet above the trailer, parallel with and adjacent to the western border of the roadway. The men attempted to first dislodge the trailer, since it was nearer the foot of the grade. Mr. McComic drove the Studebaker car above the trailer to which they attached a rope with the intention of hauling it out into the center of the roadway to then back it down the grade. The first attempt resulted in breaking the rope. Again the Studebaker car was backed to a position three feet from the rear end of the trailer. The plaintiff crept under the trailer to fasten the rope to the axle. The Studebaker machine stood headed up grade with the outside front wheel, as McComic testified, ''about the center of the road. It wouldn't vary six inches one way or another''. That left 11 feet of the roadway open on the easterly side of the highway for machines to pass. While they were in that position two other machines arrived and passed without difficulty. A few moments later, while McComic sat at the wheel of his car and while the plaintiff was still under the trailer, C. W. Flick came driving the defendants' automobile from the north over the crest of the hill and down the grade at the rate of 55 or 60 miles an hour. He was not watching the highway ahead of his machine. There was ample time and space within which to stop his machine had he been observing the roadway or driving at a lawful rate of speed. There was also a clear space of 11 feet of open roadway through which his automobile might have safely passed by the exercise of reasonable care. McComic was evidently alert, for he saw the approach of Flick's machine the moment it arrived at the crest of the hill 200 feet away. McComic saw the inattention of Flick and sounded the horn of the Marmon machine several times to attract his attention. He also waved his hat to indicate that the approaching car was to take the opposite side of the roadway. Flick evidently failed to see the stalled machines until he was close upon them. He was less than 100 feet away when he applied his brakes. His automobile skidded. It swerved to one side of the road and then to the other side, crashing into the Studebaker car and driving it back upon the trailer with such force as to pinion the plaintiff beneath it, seriously injuring him. Regarding the accident McComic testified:

"I could see the top of the car coming. . . . Before he got to the crest of the hill I could get a view of the man in the car. He wasn't looking towards me at all. He was locking off to the right. . . . As I clamped my hand on the horn, . . . I didn't get any response (from him) or his attention; the second time I done it a great deal louder, and he looked down and saw me, reached for his brake, and I grabbed my old hat and begin waving over to this side of the road. . . . He could have come through without a bit of trouble. . . . Instead of pulling over to that side of the road he reached for all his brakes. . . . The wheels began to creak and scream, . . . and his car wheels were skidding, and he come on down. . . . He swayed into my right bank,—his left, and as he swayed out again, and as he come out he crossed pretty well over the center of the road, went right in, caught my right fender here, this side, swung my car almost completely around with his car coming in at this angle against the bank."

The defendant C. W. Flick admitted that he was driving "too fast" and that he was unable to stop his car. The plaintiff suffered a broken leg and a dislocated hip and knee-cap. He also sustained a hernia and an injury to his back. A bolt was driven through the flesh of his left leg above the knee. There is evidence of a permanent disability of the right leg as a result of the accident. Suit for damages was brought against the owners and the driver of the defendants' machine. The cause was tried with a jury. A verdict of $7,500 was returned in favor of the plaintiff. On a motion for new trial this judgment was reduced to $5,000. Judgment was rendered for that amount. From that judgment the defendants have appealed.

The appellants concede there is sufficient evidence to sustain the implied finding of the jury that the defendants were guilty of negligence which resulted in the accident. The amount of the judgment is not criticised. But it is contended the evidence shows the plaintiff to have been guilty of contributory negligence as a matter of law in blocking the highway and in failing to leave at least 15 feet thereof open to traffic; that the court erred in giving and refusing certain instructions; and that counsel for the plaintiff was guilty of prejudicial misconduct in disclosing to the jury

the fact that the defendants carried indemnity insurance on their automobile which was involved in the accident.

The evidence does not show contributory negligence on the part of the plaintiff as a matter of law. Under the circumstances of this case that was a question for the determination of the jury. An emergency existed. Through no fault of plaintiff, his automobile and trailer were stalled close to the westerly side of the highway. Embankments on either side of the roadway prevented him from getting the vehicles off the highway. A clear space of 15 feet remained on the opposite side of the road for automobiles to pass until the tow machine arrived. Out of precaution the plaintiff prudently remained in the Marmon car throughout the night with the headlights burning and a flashlight in his hand to guard against a possible collision with a passing car. When daylight arrived, he walked to town to procure aid. He promptly returned with McComic and his Studebaker machine for the purpose of hauling the disabled vehicles to Plymouth for repairs. When McComic and the plaintiff returned to the scene of the accident they immediately undertook to haul the trailer from its position on the western side of the roadway. Since the Marmon car stood above the trailer, adjacent to the bank, it was necessary for the Studebaker machine to park by its side temporarily. Apparently no more space on the highway was occupied than was necessary under the circumstances. The Studebaker machine stood within one foot of the Marmon car. There were still 11 feet of clear space on the opposite side of the highway which afforded safe passage for a carefully driven vehicle.

About 200 feet intervened between the point of collision and the top of the grade. This was sufficient to enable any machine to stop provided it was running at a lawful rate of speed. The exercise of ordinary care would not require one to anticipate that an automobile driver would recklessly come over the hill and down the grade at a grossly excessive rate of speed or that he would spend his time gazing off into the fields instead of watching the road along which he was traveling. It may not be said as a matter of law that ordinary prudence would have required the plaintiff to post a danger sign at the top of the grade to warn some reckless driver of the presence of machines 200 feet beyond. Nor may we say that ordinary prudence would

have required the plaintiff to follow some other method of extricating the disabled cars. These are questions which were properly left for the determination of the jury. Even if reasonable minds may differ regarding the conduct which should be followed by one in the exercise of due care under such circumstances, still the established rule of law requires this court to support the decision of the jury in that regard.

It is asserted the plaintiff was guilty of contributory negligence as a matter of law under the provisions of section 136 of the California Vehicle Act, for attempting to remove the disabled machines without leaving 15 feet of the highway clear for the passing of automobiles. That section provides in part:

"No person shall park or leave standing any vehicle . . . upon the paved or improved or main traveled portion of any public highway, . . . when it is practicable to park or leave such vehicle standing off of the paved or improved or main traveled portion of such highway; provided, in no event shall any person park or leave standing any vehicle whether attended or unattended upon any public highway unless a clear and unobstructed width of not less than fifteen feet upon the main traveled portion of said highway opposite such standing vehicle shall be left for the free passage of other vehicles thereon.

"The provisions of this subsection shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a public highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such vehicle in such position."

Under the circumstances of this case the temporary use of the highway which left less than 15 feet thereof clear for passing vehicles, for the necessary purpose of removing the disabled machines, was not a violation of the preceding section, and did not constitute negligence as a matter of law. (*Mitsuda* v. *Isbell,* 71 Cal. App. 221 [234 Pac. 928]; *Silvey* v. *Harm,* 120 Cal. App. 561, 568 [8 Pac. (2d) 570]; *Rath* v. *Bankston,* 101 Cal. App. 274 [281 Pac. 1081]; 3-4 Huddy's Cyc. of Auto. Law, p. 109, sec. 62.) The last paragraph of section 136 of the California Vehicle Act specifically exempts the application thereof to machines which are disabled so as to render it impossible to remove

them during a temporary period of time. It is the wilful or careless parking of automobiles contrary to the inhibition of that statute which renders the conduct unlawful. In the present case the Marmon machine and trailer were stationed at the side of the roadway through no fault of the plaintiff. The Studebaker car temporarily occupied as little of the roadway as was reasonably possible in the necessary effort to extricate the trailer and get it out of the narrow pass and into town for repairs. Conceding that the negligence of McComic would be imputed to the plaintiff, it was a question for the determination of the jury as to whether their conduct constituted contributory negligence under the circumstances of this case. In view of the facts of this case, the decision of the jury in that regard may not be interfered with on appeal.

The appellants assign as error the giving of the last paragraph of an instruction which was offered by the plaintiff with respect to the foregoing quotation from section 136 of the California Vehicle Act, with reference to which the court said: "If, therefore, from the evidence in this case you find that the truck and trailer operated by plaintiff was disabled while on the paved, or improved, or mainly traveled portion of the highway in such a manner and to such an extent that it was impossible to avoid stopping, and temporarily leaving such vehicle in such position, then in such circumstances I charge you that the plaintiff was not guilty of violating, and did not violate, the foregoing provisions of the Motor Vehicle Act."

It is asserted this language "ignores the issue of plaintiff's negligence *prior to the time that his vehicle became disabled*"; and that it purports to charge the jury with relation to disputed facts. The objection to this language is without merit. There is no evidence in the record, and no contention on the part of the defendants, that the plaintiff was guilty of negligence "prior to the time that his vehicle became disabled". The challenged instruction does not purport to charge the jury that the plaintiff was not guilty of conduct constituting negligence on his part other than the violation of section 136 of the California Vehicle Act. This instruction does not assume to discuss any alleged negligence of the plaintiff occurring prior to the breaking of the axle of his machine. It merely declares that "If

. . . you find that the truck and trailer . . . was disabled . . . in such a manner . . . that it was impossible to avoid stopping, and temporarily leaving such vehicle in such position'' such conduct ''did not violate the foregoing provisions of the Motor Vehicle Act''. That language appears to constitute a correct statement of the law. It left the jury to determine whether the machines were so disabled as to render it impossible to avoid stopping on the highway, and whether the machines were permitted to remain in that position only temporarily.

Moreover, at the request of the defendants, the jury was elsewhere fully instructed regarding the alleged negligence of the plaintiff consisting of leaving the machines on the side of the road from 2 o'clock in the morning, when the axle of the Marmon car broke, until 8 o'clock A. M., when Mr. McComic arrived with his Studebaker car. No accident occurred during that period of time. In the instruction last mentioned, the jury was charged that *any violation* of section 136 of the California Vehicle Act by the plaintiff constituted negligence on his part. It concludes by saying:

''If you find from the evidence that the vehicle of Mr. Fleming was by him parked or stopped in violation of this law, and you further find that such vehicle was disabled, then the law only permitted him to temporarily leave such vehicle upon the roadway, if you find that he did so leave it. Also, if you should find from the evidence that it was possible to avoid stopping and temporarily leaving such vehicle upon the roadway in such a position as to not leave 15 feet upon the main traveled portion of said highway opposite such standing vehicle, and if you find that such vehicle was so left by the plaintiff, then the plaintiff was guilty of negligence as a matter of law for so stopping and leaving such vehicle, and if such negligence in the slightest degree proximately contributed to said accident, and his resulting injuries, if any, your verdict must be for the defendants.''

This instruction does not appear to be misleading or prejudicially erroneous.

■ Another instruction is challenged, wherein the court correctly informed the jury that the plaintiff and the driver of the defendants' machine ''were both chargeable with the exercise of reasonable care at the time in question, namely,

such care as a reasonably prudent person would have exercised under like or similar circumstances''. To this instruction the court inadvertently added the following language: ''The law requires a high degree of care of persons driving or operating automobiles which are capable of inflicting death or serious injury upon others lawfully upon the highway, . . . When driving his automobile the defendant Flick was in charge and control of a dangerous instrumentality capable of inflicting serious consequences and injuries and for that reason was charged by the law with a high degree of care, . . . You are also instructed that the plaintiff, Fleming, as well as any other person there present and under the control and direction of the plaintiff, were also charged by the law with the exercise of a high degree of care.''

The preceding quotation is not a correct statement of the law. But it is not necessarily prejudicial. (*De Greek* v. *Freeman*, 108 Cal. App. 645 [291 Pac. 854].) In this instruction the jury was clearly charged that both parties were required to exercise only that degree of *reasonable care* which a prudent person should use under similar circumstances. The jury was also repeatedly instructed that reasonable care on the part of the driver of an automobile is all that the law requires. We are persuaded the jury was not misled by that instruction. Moreover, it does not appear from the record whether the instruction which contains this objectionable language was offered by the plaintiff or the defendants. The appellants merely point to the general charge of the court containing this challenged language, which does not indicate which party offered the instruction. It does appear from the clerk's transcript that an instruction similar to this challenged one was offered by the plaintiff, but it affirmatively appears that instruction was refused by the court as ''misleading''. ■ It has been frequently held that the giving or refusal of an instruction may not become the basis of reversible error in the absence of a showing that it was offered by the respondent. In support of a judgment, under such circumstances, it will be presumed the erroneous instruction was offered by the appellants. (*Knight* v. *Gosselin*, 124 Cal. App. 290, 297 [12 Pac. (2d) 454]; *Gray* v. *Eschen*, 125 Cal. 1 [57 Pac. 664];

2 Cal. Jur. 870, sec. 509.) Assuming that the foregoing portion of the general charge of the court was erroneous, it is not reversible error for the further reason that it appears from the record that there was not a miscarriage of justice in this case. Article VI, section 4½, of the Constitution justifies an affirmance of the judgment on that ground.

The appellants assign as error the giving of two other instructions in the first of which the jury was told that in order for the defendants to avail themselves of the defense of contributory negligence, they must prove ''that such negligence on the part of the plaintiff was the proximate cause *or contributed* to the proximate cause of said accident''. The second one contains the following language: ''To sustain such a defense [of contributory negligence, it must be shown to have had] . . . *some causal connection with the accident*, . . . *or* [that it] *cooperates* with the negligent act of the defendant, if any, in being the proximate cause of the injury.'' These instructions appear to contain correct declarations of the law. It will be observed they do not state that the acts or omissions of the plaintiff must necessarily become ''the proximate cause of the accident''. They merely declare that such negligence of the plaintiff must ''*contribute* to the proximate cause'', or that it must have ''some causal connection with the accident''. Certainly the negligence of the plaintiff which has nothing to do with the cause of the accident, or that which is so remote and inconsequential that it does not affect the transaction in any manner whatever, will not debar him from recovering damages for the negligence of a defendant. Clearly the negligence which creates a liability on the part of the defendant, or that which will defeat a cause of action on the part of the plaintiff, is the negligence only which proximately causes the accident or which contributes to the cause thereof. It would be an absurd and unjust rule of law that would fasten liability upon one, or that would defeat a just cause of action, merely because the accused is guilty of some negligence which has no bearing upon the cause of an accident. The text-writers make this distinction very clear. In 1 Thompson on Negligence, page 210, section 216, it is said in that regard:

''In order, then, to prevent a recovery by reason of contributory negligence, the plaintiff or person injured must

have been guilty of a want of ordinary care; and we shall now see that this want of ordinary care must have been a proximate cause of the injury, and not a remote cause or mere condition. If the negligence of the plaintiff was only remotely connected with the injury, the plaintiff may recover damages, if notwithstanding such remote negligence of the plaintiff the defendant might have avoided the injury by the exercise of ordinary care. But if a want of ordinary care on the part of the person injured *concurs* as a proximate cause in producing the injury, the defendant is not liable, although in fault. This doctrine is involved in the meaning of the words we employ to express the negligence on the part of the plaintiff which will bar a recovery,—'*contributory* negligence'. The negligence of the plaintiff which will bar a recovery of damages for an injury sustained by the defendant's negligence must be such as *contributes* to the injury complained of; that is, as expressed by a learned and philosophic writer, it 'must be such that, by the usual course of events, it would result, unless independent disturbing moral agencies intervened, in the particular injury'."

The last-mentioned instructions were not erroneous. The giving of these instructions does not constitute reversible error. (*Flood* v. *Miura*, 120 Cal. App. 467, 476 [8 Pac. (2d) 552].) In support of their contention in that regard the appellants rely upon the following cases: *Straten* v. *Spencer*, 52 Cal. App. 98 [197 Pac. 540], *Flood* v. *Miura*, *supra*, and *Robbins* v. *Roques*, 128 Cal. App. 1 [16 Pac. (2d) 695]. These cases do not appear to uphold the construction placed upon them by the appellants. The language of the instructions which was criticised in those cases was vitally different from that which is involved in this case. We find nothing in those cases in conflict with what we have heretofore said regarding the rule applicable to contributory negligence.

The appellants assign the giving of an instruction based upon the provisions of section 139 of the California Vehicle Act, as erroneous. This challenged instruction reads:

"You are instructed that an individual driving an automobile traversing defiles, canyons or mountain highways shall hold such automobile always under control and as near the

right-hand side of the highway as reasonably possible, and upon approaching any curve where the view is obstructed within a distance of two hundred feet along the highway shall give audible warning with a horn or other warning device.''

It is contended this instruction is misleading and inapplicable to the facts of this case, since there is no evidence of the presence of a curve in the highway at the place where the accident occurred. It is, however, true that the land is hilly, if, indeed, it is not mountainous at that place. The highway is narrow. It cuts through a hill, leaving embankments on either side of the road. There is an elevation in the road which obstructed the view of the disabled machines until Flick reached a point 200 feet from the scene of the collision. The highway does not curve to the right nor to the left, but it does dip down into a swale which prevents a view of that portion of the road from beyond the crest of the hill. We are not prepared to say that the driver of an automobile must sound the horn of his machine on a straight course every time he approaches an elevation which obstructs his view for a distance of more than 200 feet, but it is not unreasonable to assume that the driver of a machine should reduce his speed and regulate the control of his machine with a greater degree of caution as he approaches the crest of a hill where his view of the highway is limited to a short distance ahead. When the vision of a driver is obstructed either by curves in the highway or by the presence of a hill or other obstacle, he should regulate the control of his machine accordingly. He should anticipate the possibility of approaching machines beyond the point of his vision. The jury was repeatedly told, as provided in section 113 of the California Vehicle Act, that the driver of an automobile should reasonably regulate the operation of his machine in accordance with surrounding conditions so as to avoid accidents, when a clear and unobstructed view is not afforded. Even though the language of the last-mentioned instruction is technically inapplicable to the circumstances of this case, it is nevertheless harmless. It seems apparent the jury could not have been misled thereby. The negligence which was relied upon by the plaintiff at the trial was evidently the excessive rate of speed at which Flick drove his machine down the

grade and his careless inattention to the highway along which he was traveling. This instruction may well have been modified or even refused, but we are of the opinion it was not prejudicial.

For the same reason assigned with relation to the preceding instruction, we are of the opinion the giving of the one which is next challenged was not prejudicial. In effect this instruction informed the jury that when the vision of the driver of an automobile was obscured by a hill or swale ''so that he has no clear or unobstructed view'' of the highway the speed of his machine should be regulated in the same manner as though his view was obstructed by any other obstacle. It is argued that this language limits the rate of speed under such circumstances to 15 miles an hour as provided by section 113 of the California Vehicle Act. We think this instruction is not subject to that construction. A specific limitation of the rate of speed under such circumstances is not mentioned in that instruction. The jury could not have reasonably so understood the charge.

It is asserted the court erred in refusing to give to the jury an instruction at the request of the defendants which was founded on the provisions of section 136 of the California Vehicle Act. This instruction declares that if the jury found that Mr. McComic's Studebaker car was parked on the highway in a position which failed to leave at least 15 feet of the width thereof clear and unobstructed, then he was guilty of negligence as a matter of law, which negligence was imputed to the plaintiff, and that if the position of the Studebaker car contributed in the slightest degree to the accident, then the defendants would be relieved of liability, and the verdict must be for the defendants.

We are of the opinion the refusal of this instruction was not erroneous or prejudicial. It is not contended that the Studebaker car was parked or left on the highway except momentarily for the purpose of removing the disabled machines belonging to the plaintiff. Section 136, *supra,* provides that, ''No person shall *park or leave standing* any vehicle . . . upon the paved or improved or main traveled portion of any public highway,'' unless a clear and unobstructed width of not less than 15 feet remains. Clearly the temporary parking or leaving of a vehicle stand-

ing momentarily on a public highway for the necessary purpose of hauling out a disabled car which was obstructing the roadway does not come within the inhibition of this statute. It would be unreasonable, and possibly a serious menace to traffic to hold that it is negligence as a matter of law for a tow car to stop necessarily and momentarily with the object of removing a wrecked machine from the highway, but which, in doing so, leaves less than 15 feet thereof open and unobstructed. It is just as absurd to say that the driver of an ambulance is guilty of negligence as a matter of law who necessarily stops on the highway for a moment only to remove an injured person, but who, in doing so, is unable to leave 15 feet of the roadway unobstructed. Statutes should receive a reasonable construction. It is said in 3–4 Huddy on Automobile Law, page 104, section 59, that: "Under the automobile statutes the term 'park' has been defined by the courts as meaning, in substance, the voluntary act of leaving a car on the main-traveled portion of the highway when not in use. It means something more than a mere temporary or momentary stoppage on the road for a necessary purpose."

The instruction which was refused is fatally defective in failing to recognize the fact that a necessary blocking of the highway for a brief and temporary purpose is not a violation of section 136 of the California Vehicle Act and, therefore, under such circumstances it does not constitute negligence as a matter of law. The omission to so instruct the jury, in the present case, is particularly misleading for the reason that it appears that McComic's Studebaker car occupied for only a moment or two just as little of the highway as possible for the necessary purpose of extricating the disabled trailer. Moreover, the jury was elsewhere clearly instructed that any negligence on the part of McComic which contributed to the cause of the accident would be imputed to the plaintiff so as to prevent him from recovering a judgment in this case. It was, therefore, not prejudicial for the court to refuse to give to the jury this instruction.

Finally, the appellants contend that the plaintiff's attorney was guilty of prejudicial misconduct in disclosing to the jury the fact that the defendants were insured against accident, and by referring to the evidence of that fact in his argument to the jury.

The evidence of the defendants' insurance was developed for the first time on the cross-examination of C. W. Flick, who drove their machine at the time of the accident. Immediately after the accident occurred, another machine containing several ladies appeared at the scene of the accident and stopped to take the plaintiff to town for medical aid. Counsel for the plaintiff interrogated the defendant Flick on the witness-stand regarding his admission of negligence. This colloquy occurred: "Did he (Mr. McComic) start to take your number? . . . A. After we had Mr. Fleming in this car and these ladies were taking him to the doctor he did, and I took his number. Q. Yes. What was said? A. Oh, he asked me if I had any insurance and I think I told him yes. Q. Go ahead. *What did you say about the accident?*"

No motion was made to strike the defendant's answer from the record. No motion was made to direct the jury to disregard it. While Mr. McComic was being examined as plaintiff's witness, in response to interrogations, he related in detail the circumstances of the accident. After a lengthy narrative he paused. Plaintiff's attorney then said: "Q. Go ahead." He then resumed his narrative, in the course of which he said: "I asked Mr. Flick to give me aid putting Mr. Fleming in their car, so they (the ladies heretofore referred to) did and drove away to Plymouth. I took my pencil, I remember, from my pocket, started to take Mr. Flick's car number, and Mr. Flick says not to mind the car number, and he says, 'I have insurance and they will take care of this.' "

No objection was made to this testimony, and no motion was made to instruct the jury to disregard it. It is therefore competent for the jury to consider this evidence in determining the question of defendants' negligence.

The courts have frowned upon the unnecessary developing of the interest of a surety company in the trial of a damage case when the company is not a party to the suit. This is especially true when the question of negligence is so doubtful as to leave the reasonable inference that the evidence of the interest of the insurance company is likely to have prejudiced the jury, or when it appears that counsel for the plaintiff is not in good faith in presenting the evidence. (*Citti* v. *Bava,* 204 Cal. 136 [266 Pac. 954].)

In the case of *Baroni* v. *Rosenberg*, 209 Cal. 4 [284 Pac. 1111], which is relied upon by the appellants in this case, an order granting a new trial after judgment was rendered in favor of the plaintiff, was affirmed by the Supreme Court, based upon prejudicial misconduct of the attorney for plaintiff by declaring, contrary to the fact, that the claimant in that case was receiving compensation for his injuries and that *"he will get it as long as he lives"*. Clearly that was prejudicial. There appeared to have been no valid excuse for the declaration. In the present case the plaintiff's attorney did not intentionally develop the challenged evidence. Plaintiff contends that it was competent as tending to show the negligence of defendants from the admissions of the driver of their automobile.

It is a well-established rule of law in accordance with justice and reason that when evidence is competent because it is addressed to a valid issue in the case, it is admissible even though it may incidentally disclose the fact that an insurance company is interested in the outcome of the litigation. ' (*Dermer* v. *Pistoresi*, 109 Cal. App. 310, 315 [293 Pac. 78] ; *Elsey* v. *Domecq*, 114 Cal. App. 42, 50 [299 Pac. 794] ; *Rowe* v. *Rennick*, 112 Cal. App. 576 [297 Pac. 603].) In the present case the evidence which is objected to appears to have been competent. It was introduced without objection, and remains in the record without a motion to strike it out. It is legitimate argument that it tends to establish the negligence of the defendants by their admission. The appellants may therefore not complain of its presence or effect upon the verdict of the jury.

 In the course of his argument to the jury, counsel for the plaintiff subsequently referred to these statements regarding the insurance, claiming that they were competent as admissions of negligence on the part of the defendant who drove the car. Counsel for the plaintiff was interrupted by the attorney for the defendants who assigned the reference to defendants' insurance as prejudicial misconduct and asked that it be stricken from the record and that the jury be admonished to disregard it. The motion was granted and the jury was so instructed. The following colloquy occurred regarding that incident:

(Argument to the jury by Mr. Mazzera:) ''And what did Mr. Flick say to Mr. Fleming and Mr. McComic there. He

said: 'My insurance company will take care of this'—
(Mr. Honey, attorney for defendants) Just a moment,
just a moment. I assign that as misconduct, and ask to
have this jury panel discharged. . . . (Mr. Mazzera) And
that is an admission of liability, your honor, and we are
arguing it from that viewpoint. The Court: The jury will
disregard the remarks just made by counsel.''

The appellants concede that error may not be predicated
on the admission of the evidence which disclosed the fact
that the defendants carried insurance. In their opening
brief they say: ''Appellants are not complaining of the
manner in which the subject of insurance was first men-
tioned, as disclosed by the above testimony.'' They do,
however, insist that it was prejudicial misconduct on the
part of plaintiff's attorney to refer to that subject in his
argument to the jury, and that his conduct constituted
reversible error in spite of the fact that the court instructed
the jury to disregard it.

Under the circumstances of this case we do not consider
the conduct of plaintiff's attorney prejudicial. It does not
constitute reversible error. We are unable to say from the
record that plaintiff's attorney purposely elicited this evi-
dence, or that he was not in good faith in referring to it
in his argument to the jury. In the first place, the de-
fendant himself who drove the machine which was involved
in the accident volunteered the statement that McComic
''asked me if I had any insurance, and I think I told
him yes''. In the second place, McComic in a lengthy nar-
rative of the details of the accident volunteered the state-
ment that Mr. Flick told him ''I have insurance and will
take care of this.'' There is nothing in the record indicating
bad faith on the part of plaintiff's attorney with relation to
this evidence. These statements of the driver of defendants'
machine furnish some valid evidence of admissions on his
part that he was guilty of negligence. They are in accord
with his first admission that he was ''driving too fast''.
These statements having been introduced as competent evi-
dence of admissions of negligence, and having remained
in the record without objection on the part of the defend-
ants, it was legitimate argument to refer to them in support
of the contention that the defendants were guilty of negli-
gence. This was the asserted purpose of the attorney for

plaintiff in referring to this evidence. Even though there be a doubt regarding the right of counsel to refer to this evidence in his argument, it appears to have been done in good faith in the belief that it was legitimate argument, and it was harmless for the reason that the evidence remained in the record for the consideration of the jury regardless of whether or not counsel was permitted to comment upon it in his argument. The evidence of the fact that the defendants were insured does not appear to have been deliberately elicited. It was voluntarily referred to first by the defendant C. W. Flick and then by Mr. McComic. It was not objected to by the defendants. The appellants concede that it is a proper part of the record.

In the case of *Rowe* v. *Rennick,* 112 Cal. App. 576 [297 Pac. 603], a judgment against the defendant in an automobile casualty was affirmed and a hearing by the Supreme Court denied, wherein evidence was adduced at the trial that the defendant said, ''Don't worry, everything is all right. I got 100,000. or 200,000. dollars insurance, and you don't have to worry about insurance; I will take care of everything.'' In that case the statement was stricken from the record and the jury was instructed to disregard it. The court said:

''From an examination of the record, we find that the jury could not, consistently with their oaths, have rendered any verdict for the defendant. It is not a question of where the testimony is evenly balanced, but one where it is only a question of how much.''

That language is quite applicable to the fact of the present case. In this case, the defendants clearly appear to have been guilty of negligence, and the plaintiff appears to have been exceedingly cautious to prevent an accident. We are unable to see how the jury could have conscientiously reached any other verdict than one which was rendered for the plaintiff.

The attorney for plaintiff is further charged with prejudicial misconduct in saying to the jury in the course of his argument, ''I believe Mr. Flick if sitting with you up at his mill would say, 'I want to see this man get something.' '' Upon motion this statement was also stricken from the record and the jury was instructed to disregard it. That statement does not constitute prejudicial misconduct.

An attorney is permitted to argue to the jury any theory of the evidence of which it is reasonably susceptible. It is not unreasonable to assume that the attorney for plaintiff meant by this language to say that from Mr. Flick's admissions that he "drove too fast" and that "I have insurance and they will take care of this," he conceded that he knew the accident occurred as a result of his own negligence and therefore he would "like to see this man get something" to compensate him for his injuries because he was entitled to it.

The plaintiff's testimony that he owed a bill of $115 at the county hospital was competent to show one item of expense which he had incurred as a result of the accident. His further statement that he was unable to pay that bill was incompetent. That was stricken from the record and the jury was instructed to disregard it. It was harmless.

Finally, the attorney for plaintiff is charged with prejudicial misconduct in asking Mr. C. W. Flick, who had admitted that defendants' automobile was paid for by himself and his brother, but that the title stood in the name of their mother, "Isn't it a fact you carried that car in your mother's name so that there could be no recovery against you?" An objection to that question was sustained. It was incompetent, and should not have been asked. There is no evidence that it was prejudicial. We must assume that a jury will make some allowance for the zeal and occasional prejudice of respective counsel in behalf of their clients. The jury was very fully charged upon all the material issues of the case. It was admonished to disregard evidence which was stricken from the record, and to refrain from considering unanswered questions to which objections were sustained. The trial judge appears to have been very careful to see that the defendants should have a fair and an impartial trial. The verdict of the jury is warranted by the record.

The judgment is affirmed.

Pullen, P. J., and Plummer, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 13, 1934.