[Civ. No. 5660.   Third Appellate District.—November 18, 1937.]

LLOYD McCULLOUGH, Respondent, v. JOSEPH LANGER, Appellant.

Horace W. B. Smith and George A. Work for Appellant.

Carter, Barrett, Finley & Carlton for Respondent.

THOMPSON, J.—The defendant, Dr. Joseph Langer, has appealed from a judgment which was rendered against him in a suit for malpractice of the medical profession consisting of alleged improper use of an infra-red incandescent lamp which caused permanent injury to plaintiff's leg in the nature of a third-degree burn, as a result thereof. A jury returned a verdict in favor of the codefendant, Mae Roberts, who, as appellant's nurse, had charge of the patient at the time of the injury. The cause was dismissed as to the other codefendant, Dr. Hoag. The jury returned a verdict of $50,000, which, upon motion for a new trial, was reduced to $25,000.

The appellant is a regularly licensed physician who resides in Siskiyou County, California. He was employed as local physician for the Fruit Growers Supply Company, which was engaged in a logging business in the vicinity of Hilt in that county. He owned and operated a hospital at Hilt. The codefendant, Mae Roberts, was employed by him as a nurse in that hospital and had personal charge of the patient under the supervision of the appellant. The plaintiff was employed

by the Fruit Growers Supply Company, and was engaged in operating a platform crane at the time of the accident. He was caught between the stationary platform and a revolving portion of the crane and his leg was drawn into a 4½ inch aperture seriously crushing and bruising the flesh of his left thigh. There was no abrasion of the skin. He was taken to the appellant's hospital for treatment. X-ray pictures disclosed the fact that no bones were broken. He was placed in bed about 1:30 o'clock that afternoon. Opiates were administered to relieve his suffering. The chief injury which he received was on the anterior of the left thigh. Hot compresses were applied to the injured part, consisting of towels saturated with a hot saline solution and covered with a rubber sheet over which a dry towel was placed. A 500-watt incandescent infra-red lamp was then applied to the injured part through the compress. The lower rim of this lamp was suspended at a distance of twenty-one inches from the thigh of the patient. At 2:30 P. M. codein was administered to relieve his pain. The plaintiff testified that he thereafter became unconscious until he awoke at 5:30 P. M. Neither the compress nor the lamp was changed or removed from 1:30 until 5:30 P. M. The nurse did occasionally place her hand under the compress and ascertained that "it was still warm", and that the skin was moist. It appears that Dr. Langer, whose office was just across the hall from the room in the hospital which was occupied by the patient, visited him occasionally during that period of time. It does not appear that he participated personally in arranging the compress or lamp; that he interfered with the treatment administered by the nurse; that he instructed her regarding the time or the manner of using the lamp or that he directed her to watch the result of the treatment of the injury. About 4:30 o'clock the nurse asked the appellant whether the lamp or compress should be changed. He advised her to leave them as they were until after the patient's evening meal. At 5:30 o'clock that evening the plaintiff awakened in great pain and rang for the nurse, who then removed the lamp and compress and found that the skin over the wound was blistered. This blister covered a space eight by ten inches in area. The evidence supports the implied finding that the plaintiff suffered a third degree burn on account of this negligence in treating his injured thigh. For a period of about two years

he suffered great pain; his ability to work was seriously impaired and certain medical experts testified that the result of the burn was permanent in its nature. Repeated graftings of skin over the burned area were necessary. The grafted skin cracked and the wound bled frequently. It failed to heal and the plaintiff endures pain, discomfort and inconvenience which impairs his earning ability.

It is contended the evidence fails to support the judgment; that the exoneration of the nurse from negligence exempts the appellant from liability; that the court erroneously charged the jury with respect to the doctrine of *res ipsa loquitur*; that the court erred in rejecting evidence and in refusing to permit the attorney for the defendants to argue their case to the jury; that the plaintiff's attorneys were guilty of prejudicial misconduct particularly in adducing evidence that the appellant carried indemnity insurance, and that the damages which were awarded are excessive.

We are of the opinion the judgment is adequately supported by the evidence showing that the appellant was guilty of malpractice in the treatment of the plaintiff's injured thigh. The mere use of an incandescent infra-red lamp to keep the compress warm over the injured portion of the limb did not constitute malpractice. But the manner in which the lamp was used and the period of time during which the devitalized flesh of the injured limb was submitted to excessive heat therefrom, in our judgment, constitutes negligence which amounts to malpractice. The evidence is undisputed that tender, devitalized flesh is much more susceptible to burning from excessive heat than is normal flesh. In response to a request from Dr. Rea to specify what he considered wrong with the treatment of plaintiff's injury by the appellant and which was not in accordance with good medical practice in that vicinity, he testified: "It is not what he did; it is what he didn't do. He should have watched his light, . . . watched his bandage and watched his skin." Two qualified physicians testified that the third degree burn which was suffered by the plaintiff was the result of submitting the tender, devitalized flesh of the bruised thigh to excessive heat from the infra-red light for too great a length of time. It appears the compress was left undisturbed over the wound with the heat of the lamp applied thereto for more than four hours, without adequate effort to ascertain the

result of such treatment. There is evidence this lamp would generate 140 degrees of heat in one hour, and that the maximum heat which should be applied to that wound under the circumstances was not to exceed 110 degrees Fahrenheit. These physicians testified that the treatment of this injury which was administered by the appellant was not in accordance with approved medical practice of competent physicians in that vicinity. This furnishes sufficient evidence to support the judgment.

The exonerating of the nurse from negligence as a result of the rendering of a verdict by the jury in her favor does not necessarily relieve the appellant from liability. In support of his contention that he is relieved of responsibility by the rendering of a verdict in favor of his codefendant, the appellant relies on the case of *Bradley* v. *Rosenthal*, 154 Cal. 420 [97 Pac. 875, 129 Am. St. Rep. 171]. In the case of *McInerney* v. *United Railroads of San Francisco*, 50 Cal. App. 538, 549 [195 Pac. 958], in which a hearing was denied by the Supreme Court, a similar contention was disposed of in the following language:

"This brings us to the final contention urged by the appellant, which is that since the jury by its verdict in favor of the appellant's codefendant, Fitch, exonerated the latter from liability for the injuries of which the plaintiff complains, it must necessarily be held to have also exonerated the appellant as the employer of Fitch from liability for his acts as its employee. In making this contention the appellant relies upon the case of *Bradley* v. *Rosenthal*, 154 Cal. 420 [129 Am. St. Rep. 171, 97 Pac. 875], and *Thompson* v. *Southern Pacific Co.*, 31 Cal. App. 567 [161 Pac. 21], and also upon certain cases cited from other jurisdictions. These cases are, however, distinguishable and are in fact distinguished from the case at bar under the authority of *Benson* v. *Southern Pacific Co.*, 177 Cal. 777 [171 Pac. 948], wherein it is stated that where the act of the employee was one for which the employer was liable only under the application of the rule of *respondeat superior*, the doctrine laid down in *Bradley* v. *Rosenthal* and the other above-cited cases might be applied, *but that the principle invoked in those cases was not to be given application to a case where the employee was acting under the direction of his employer, who was therefore liable not merely*

*under the rule of respondeat superior, but rather as a joint participant in the acts complained of."*

Under the circumstances of this case the nurse was presumed to attend the patient under the supervision and direction of her employer, Dr. Langer. As the McInerney case, *supra,* states, the employer "was therefore liable not merely under the rule of *respondeat superior, but rather as a joint participant in the acts complained of."* (*Armstrong* v. *Wallace,* 8 Cal. App. (2d) 429, 439 [47 Pac. (2d) 740].) In the case last cited, this court said:

"The surgeon had the power and, therefore, the duty to direct the nurse to count the sponges as a part of his work in the opening and closing of plaintiff's abdomen and the putting in and taking out of sponges, and *it was his responsibility to see that such work was done."*

In the present case it was the duty of the doctor in his treatment of the patient to see that the compress and lamp were used in such a manner as to prevent the application of excessive heat and a consequent burning of the flesh. The supervision of the doctor is shown by his personal visits to the room of the patient and by the inquiry of the nurse addressed to him an hour before the burn was discovered as to whether she should not then change the compress and lamp to which he replied, "leave them until after his evening meal". The appellant was therefore not relieved of liability because of the verdict favorable to his codefendant.

The court properly instructed the jury at the request of the plaintiff respecting the doctrine of *res ipsa loquitur.* The appellant contends that "The lamp and the compress having been used *in the course of the treatment* as distinguished from their use in making the diagnosis, the giving of these instructions was error". We are unable to reasonably draw a distinction between the taking of X-ray pictures to ascertain the nature of an ailment and the actual treatment of a case by the physician, in their application to the doctrine of *res ipsa loquitur.* It seems reasonable to conclude that ordinarily the diagnosing of the ailment of a patient is a necessary prerequisite to and part of the proper professional treatment of the case. It is necessary for a physician to first determine the nature of an ailment before he may intelligently treat the disorder. It has been repeatedly held in this jurisdiction that the doctrine of *res ipsa loquitur* applies

518

to cases involving the negligence of a physician in the use of X-ray pictures taken for the purpose of diagnosing an ailment and also in the manner of actually treating the disorder. (*Moore* v. *Steen,* 102 Cal. App. 723 [283 Pac. 833] ; *Meyer* v. *McNutt Hospital,* 173 Cal. 156 [159 Pac. 436] ; *McBride* v. *Clara Barton Hospital,* 75 Cal. App. 161 [241 Pac. 941] ; *Timbrell* v. *Suburban Hospital, Inc.,* 4 Cal. (2d) 68 [47 Pac. (2d) 737].) In the present case the plaintiff was burned in some way unknown to him, as a result of the treatment of his injury by the appellant. It occurred while he was under the influence of opiates which prevented him from knowing just what caused the burn. The appellant contended that the blister occurred as a result of the plaintiff's crushed thigh, and not from the application of the compress or excessive heat from the lamp. In the Meyer case, the McBride case and the Timbrell case, above cited, the respective plaintiffs were burned similarly to the plaintiff in this case, by the application of excessive heat from hot-water bottles. We see no distinction between similar injuries received from excessive heat from a hot-water bottle and those resulting from an incandescent lamp. We therefore conclude that the doctrine of *res ipsa loquitur* was applicable to the facts of this case, and that the court properly instructed the jury in that regard.

■ It was not prejudicial misconduct for plaintiff's attorneys to offer in evidence a letter written by the defendant and addressed to ''W. H. Harriman, Adjuster, U. S. Fidelity and Guaranty Co., Room 528, 369 Pine St., San Francisco, Cal.'', although the letter tended to prove that the insurance company may have been interested in the outcome of the litigation. This letter was competent evidence to show that the appellant had previously made a statement in writing which was in conflict with his testimony at the trial to the effect that the plaintiff was not burned as a result of the application of the compress and excessive heat from the incandescent lamp. This letter, over the signature of the doctor, describes the injury received by the plaintiff in the accident at the platform crane, and the treatment administered by the appellant, and then says: ''The burn was due to the initial application of a compress over devitalized tissue.'' It is the established rule of law that when evidence is competent because it is addressed to a valid issue in the case, it is admissible even though it may incidentally disclose the fact

that an insurance company is interested in the outcome of the litigation. (*Fleming* v. *Flick,* 140 Cal. App. 14, 32 [35 Pac. (2d) 210] ; *Cozad* v. *Raisch Imp. Co.,* 175 Cal. 619 [166 Pac. 1000] ; 10 Cal. Jur. Supp. 666, secs. 29e and 29f.)

█ Nor do we think it amounted to prejudicial misconduct for plaintiff's attorney to ask Dr. Newton, a witness for the defendants, on cross-examination whether he owned stock in that insurance company. No objection to this question was made but defendants' attorney assigned it as prejudicial misconduct. The court of its own motion directed the jury to disregard it and the statement of counsel with respect thereto. We cannot say this question was asked by counsel in bad faith. The inference that the defendant was insured already appeared in evidence from the proper introduction of the letter referred to. The challenged question therefore merely called for cumulative evidence of the same fact. Under proper circumstances it is competent to show the bias of a witness, even though the evidence thereof incidentally discloses the fact that an insurance company is interested in the outcome of the case. (10 Cal. Jur. Supp. 668, sec. 29g ; *Cozad* v. *Raisch Imp. Co., supra.*) █ We do not think it constituted prejudicial misconduct for plaintiff's attorney, in the course of his argument to the jury, to have referred to the letter "written to the United States Fidelity & Guaranty Company", in which letter the attorney stated that the appellant said "that it was a burn". The reference to the insurance company was properly made to identify the letter. This was valid argument from competent evidence in the record to refute the defendant's contention that plaintiff was not *burned* as a result of his treatment. The use of such argument under circumstances similar to those presented in this case was held not to constitute prejudicial misconduct. (*Fleming* v. *Flick, supra.*)

An attorney should be careful not to unnecessarily disclose to a jury the interest of an insurance company in the outcome of litigation to which it is not a party. The utmost good faith should be exercised in that regard lest it may create a prejudice in the minds of jurors which will result in an unjust verdict. In a careful reading of the record in this case with respect to this issue, we are unable to say there is evidence of bad faith on the part of counsel, and we are

therefore of the opinion the challenged evidence does not constitute prejudicial misconduct.

■ The appellant contends that the court erred in sustaining objections to several questions propounded to him for the purpose of impeaching the testimony of Dr. Rea who testified that Dr. Langer acknowledged to him in a conversation which previously occurred that his treatment of the plaintiff resulted in a serious burn; that he then "confessed judgment" (meaning that he admitted his negligence), and that he asked Dr. Rea to appear at the trial as a witness in his behalf and testify falsely regarding the nature of the burn. In a lengthy examination of Dr. Langer, objections were sustained to the following questions, and to other similar ones: "I will ask you what the conversation was between you and Dr. Rea . . . ?" "Did you ask Dr. Rea to come and give false testimony for you in connection with this case?" "What was the conversation which took place between you and Dr. Rea at that time . . . ?" "What did you say to Dr. Rea at that time and place about anything connected with this trial?"

The sustaining of objections to these questions was harmless. They called for evidence which was merely cumulative. The subject-matter was fully covered and the contradiction of the testimony of Dr. Rea in that regard was clearly elicited from the appellant in other questions which were answered without objections, as follows:

"Mr. Work: Q. Doctor Langer, at the time you called upon Doctor Rea in Yreka here the first time, did you ask Doctor Rea to come here and give false testimony in your behalf? A. No, I did not. Q. Did you have any conversation with Doctor Rea at that time affecting this case? A. No, I did not."

There is no merit in the foregoing assignments of error.

■ It was not error for the court to sustain an objection to appellant's offer to prove by a witness named Burton R. King that he was afflicted with osteomyelitis of the right knee and the left elbow, and that Dr. Langer had treated him for those ailments for five years, frequently applying to the respective limbs hot compresses and "the infra-red ray lamp" for periods as long as four hours without burning or blistering the skin. The objection was properly sustained. It is the established rule of law that evidence of experiments or

experiences of this nature which are not connected in any manner with the transaction involved in the case at bar, is not competent unless the conditions are similar. (*Baker* v. *Hancock,* 29 Ind. App. 456 [63 N. E. 323, 64 N. E. 38] ; *Rayburn* v. *Day,* 126 Or. 135 [268 Pac. 1002, 59 A. L. R. 1062].) The evidence in the present case is clear that the plaintiff was burned because excessive heat was applied to flesh which was devitalized and therefore more susceptible to heat on account of the bruised and crushed condition of the thigh. In the proffered testimony of King it appears that he was suffering from no such ailment. His flesh was not devitalized. It was normal in its condition. He was afflicted with osteomyelitis, which is defined as inflammation of the marrow of the bone. There was no offer to show that his flesh over which the compress and lamp were placed was not in a perfectly healthy, normal condition. The condition of his flesh was not the same as that of the plaintiff. The objection was, therefore, properly sustained.

For the reason last assigned objections to the questions propounded to Doctors Vidricksen and Dickinson were also properly sustained. There was no offer to show that the condition of the patients who were involved in those questions was similar to that of the plaintiff. ■ With respect to the challenged ruling upon the question asked of Dr. Dickinson it was purely hypothetical in its character. It failed to include many essential factors of the issues involved in the case at bar. As a hypothetical question it was clearly defective. An answer to that question would throw no light on the issues in the present case.

■ Nor was the court guilty of prejudicial misconduct in illustrating his reason for ruling on the objection. His statement was harmless. A court has a right to assign his reason for a ruling upon an objection to testimony, provided it is not prejudicial in its nature.

■ The appellant has cited as prejudicial misconduct numerous statements made by one of the attorneys for plaintiff in his argument to the jury. These statements consist of extravagant constructions of evidence, an attack upon the credibility of witnesses, appeals to the sympathy or prejudice of jurors, a request for the jurors to ''place yourself as nearly as possible in the position of this plaintiff'', and a misstatement of the law in asserting to the jury that ''You

can ignore the testimony of all the witnesses if you desire''. We are convinced that none of these statements constitutes reversible error under the circumstances of this case. Only two of them were assigned as error. One of these assignments was with respect to the above quoted misstatement of law. The court then said:

''Well, as I before warned the jury, I will instruct on the law before the case goes to the jury. *You are to take the instructions on the law from me.''*

The jury were subsequently fully instructed that they must determine the case upon the evidence adduced at the trial, and that they were the exclusive judges of the weight and sufficiency of the evidence and of the credibility of witnesses. In regard to the alleged misstatement of facts or the distorting of evidence, the court said:

''In all these assignments of misconduct, the jury are again admonished it is up to you to judge for yourselves what the evidence shows.''

The jury were again told that they must disregard statements of counsel which were not supported by the evidence.

We must assume that the jurors understood and followed these admonitions of the court. We do not approve of exaggerated statements of the evidence or appeals to the sympathy or prejudices of jurors, which are too frequently resorted to by counsel in their arguments to juries. Unwarranted and deliberate attacks upon the credibility or motives of witnesses are unjustifiable. It is the province of trial judges to prevent such abuses. But of course it is the privilege of an attorney to draw any inference with respect to the facts or the credibility of witnesses of which the evidence is reasonably susceptible. (*Baker* v. *Market St. Ry. Co.,* 123 Cal. App. 688, 694 [11 Pac. (2d) 912].) We must assume that the common sense of most jurors will aid them in distinguishing reasonable deductions of evidence from fanciful distorted constructions thereof. The errors of these challenged statements, if any such exist, were waived by failing to request the court to direct the jury to disregard them. (*Olsen* v. *Standard Oil Co.,* 188 Cal. 20, 26 [204 Pac. 393]; 1 Cal. Jur. Supp. 330, sec. 90; *North* v. *Vinton,* 17 Cal. App. (2d) 214 [61 Pac. (2d) 950]; 2 Cal. Jur. 281, sec. 90.) Moreover, the court of its own motion did in general terms instruct the jury to disregard them. We are of the opin-

ion they were not prejudicial, and certainly they do not constitute reversible error under the circumstances of this case.

■ The court did not abuse its discretion in refusing to permit defendants' counsel to reply to the plaintiff's closing argument to the jury. Defendants' attorney expressly waived his right to argue the cause to the jury. At the close of the testimony the court limited the time for presenting arguments to one and a half hours for each side. This seems to have been approved and well understood. Mr. Carter, one of the attorneys for plaintiff, stated that they anticipated their opening argument would consume not to exceed thirty minutes. The clear statement was that he would consume the balance of their allotted time in closing the argument. He said in that regard:

"We think an hour and a half for each side is ample to present the case. *Of course we have the opening and closing* and it was our plan that Mr. Finley would take half an hour for the opening and I would take an hour for closing."

In reply to that suggestion the court said: "In that case I think we had better have the opening this afternoon". Thereupon Mr. Finley opened the argument in behalf of the plaintiff, consuming about twelve minutes' time. The reporting of his argument consumed six typewritten pages. It seems to be a fairly comprehensive statement of the issues upon which the plaintiff relied for a judgment. It is brief and concise. The issues were not avoided. We may not say this argument was not presented in good faith as a fair opening argument. At the close of Mr. Finley's argument, Mr. Work, one of the attorneys for the defendants, said:

"We ask now that the jury be instructed. We don't desire to argue at this time. The opening argument has been introduced by the plaintiff and we do not desire to answer it."

Mr. Carter then insisted on closing the argument for the plaintiff according to the previous understanding and order of the court. Before permitting Mr. Carter to proceed with his closing argument, the court warned counsel for the defendants that he must argue his case then or he would be precluded from doing so later. The court said:

"If he (Mr. Carter) wishes to argue, I will permit it, *but I will not do so without giving you* (Mr. Work) *an opportunity to argue first. . . .* If you want to make your argu-

ment, I will have to insist that you do it now, and if you want to waive it, you can waive it."

With the statement that "We assume that Mr. Finley hasn't made an argument that requires any answer", Mr. Work declined to reply at that time, claiming the right to follow the argument of Mr. Carter. Mr. Carter consumed the balance of the time allotted to the plaintiff, in his closing argument. Mr. Work then asked permission to answer that argument which was refused.

Both parties to an action which is tried before a jury ordinarily have the right to have the facts of their case argued to the jury. (*Shippy* v. *Peninsula Rapid Transit Co.,* 197 Cal. 290 [240 Pac. 785] ; 3 Bancroft's Code Practice, p. 1860, sec. 1388; 64 C. J., p. 244, sec. 259.) According to the last-cited authorities that right may be waived expressly or by fair inference from the conduct of counsel.

It is the custom and the prevailing rule of procedure that the party upon whom the burden of proof rests has the right to open and close the argument subject to a reasonable discretion on the part of the court to regulate the time and manner of presenting the arguments. (Section 607 [4], Code Civ. Proc.) It is ordinarily true that when the party who is entitled to open the arguments waives that privilege he may not be permitted to close the argument when his adversary also waives argument. It is usually true that when counsel for the respondent declines to reply to a fair opening argument, the one upon whom the burden rests may not then be permitted to further continue his argument. (2 Bancroft's Code Practice, p. 1860, sec. 1389; *St. Louis etc. R. Co.* v. *Vanzego,* 71 Kan. 427 [80 Pac. 944].)

In the interest of justice there is and should be an exception to this last-mentioned rule. When it is previously understood from a specific order of court that each side is allotted a fixed period of time for arguments to be divided between two or more attorneys for respective sides and one of the attorneys upon whom the burden of the affirmative rests makes a full and a fair presentation of the issues upon which he relies for judgment, it is within the sound discretion of the trial judge to require the opposing counsel to then make his reply, or, upon his refusal to do so, he may be precluded from following the closing argument of his adversary. This is based on the established custom of granting to the affirma-

tive side of a controversy the opening and closing of the arguments. It sometimes occurs that after the time for arguments has been fixed by the court, the attorney having the affirmative seeks to reserve his theory of the case for his final argument by waiving his right to the opening. He then runs the risk of losing his opportunity of making the closing argument if his opponent sees fit to submit the cause without argument. Since there is then no argument to answer, it has been held the court will not abuse its discretion by refusing to permit the plaintiff to make a closing argument, for such strategy would have the effect of depriving the defendant of the opportunity to answer his opponent's argument, and might result in possible injustice. Regarding the waiving of an opening argument it is said in the Vanzego case, *supra*:

"It is a constant temptation, sometimes yielded to by able and reputable practitioners engaged for the plaintiff, to have a mere nominal opening argument made in order that in the closing arguments they may, without repetition, present their case and the evidence to support it in its most favorable light, and thus debar the opponent from disclosing any flaws or fallacies which, with great cunning and skill, they may weave into the texture of the final address and thus conceal them. It is a wholesome practice to have it understood that the party having the burden of the issue must. make a full and fair presentation of his case in the opening, or take the chances of entirely losing the opportunity so to do."

Under circumstances comporting with the text last quoted, it was held in *Ewing* v. *Union Pac. R. Co.*, 117 Kan. 200 [231 Pac. 334], that where counsel for the defendant waived his argument at the conclusion of oral argument for the plaintiff, it was not error to refuse to permit the attorney for the plaintiff to make further argument.

When the court has previously allowed a specified period of time for arguments to be divided between adverse counsel and an attorney representing the affirmative of the controversy has made a reasonably fair opening argument, it is not an abuse of discretion to allow him or an associate to complete the argument within the allotted time even though adverse counsel may waive his argument at the close of the opening presentation. (*Bisinger* v. *Sacramento Lodge No. 6, etc.*, 187 Cal. 578, 586 [203 Pac. 768, 771].) In the case last

cited, under circumstances similar to those presented in the present case, it is said:

"If, after stipulating that each side should have an hour for argument before the jury, the defendant, without previous notice to the plaintiff, waives argument and thus takes the plaintiff by surprise, the court, in the exercise of a sound discretion, should allow the plaintiff whatever argument to the jury is necessary in order to overcome the effect of the surprise. *And, similarly, should allow the defendant whatever argument was necessary in order to prevent any prejudicial result flowing from the fact that it waived argument before it knew that the court would permit further argument by plaintiff.* This was done in this case. The ruling of the court was not erroneous, but proper."

In the present case we think the court did not abuse its discretion in refusing to permit an attorney for the defendants to argue the case after the closing argument for the plaintiff was completed, for the reason that we are unable to say plaintiff's opening argument was not a fair presentation of the issues upon which he relied, and because the allotment of time was previously made and defendants' counsel were warned of the ruling in ample time to afford them an opportunity to present their arguments in the designated time and manner authorized.

Finally, the appellant insists that the judgment of $25,000, which was rendered against him, is still excessive. This seems to be the most serious problem in the case. Whatever we may think regarding the permanency of plaintiff's injury or the impairment of his ability to perform his accustomed labor, we are bound by competent evidence which supports the judgment in that regard. The record contains the evidence of two medical experts which adequately supports the judgment. Moreover, it was the sole province of the jurors to judge of the credibility of witnesses, and of the weight and sufficiency of their evidence. With this province we may not interfere unless the verdict is so grossly excessive as to shock one's conscience, or the circumstances of the case make it evident that the verdict of the jury was the result of passion and prejudice. We are convinced that the verdict of $50,000 was excessive, and that the trial court was justified in reducing it. The appellant argues that the circumstances of this case, including the evidence of his indemnity insur-

ance and the plaintiff's aggressive use of that fact before the jury, together with the excessive award of a $50,000 verdict, show that the jurors were prompted by passion and prejudice, and that the trial court recognized that fact by reducing the judgment to $25,000. We are of the opinion this does not necessarily follow. The trial court had a right to reduce the award of damages to an amount which it believed was fairly supported by the evidence, as a condition upon which a new trial would be denied. The court has a right to require the judgment to conform to the evidence, even though it may not believe it was procured as the result of passion and prejudice of the jury. Having thus reduced the judgment, we are now confronted with the question as to whether it is still so grossly excessive as to require this court to set it aside. We are convinced the plaintiff was seriously burned as a result of the negligence of the appellant in his treatment of the injury, which amounted to malpractice. The evidence that the injury is permanent in its nature and proof of the extent to which plaintiff may be impaired in the use of his limb on account of appellant's treatment, are not entirely satisfactory. But there is substantial testimony to support the evidence that his injury resulting from appellant's treatment is permanent and that his earning ability has been impaired and that he will continue to suffer pain and inconvenience.

We are therefore of the opinion we should not further disturb the award of damages.

The judgment is affirmed.

Pullen, P. J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 18, 1937, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 17, 1938. Curtis, J., Edmonds, J., and Houser, J., voted for a hearing.