[Civ. No. 9293. Second Appellate District, Division One.—June 19, 1935.]

LILLIAN E. SWIGERT, Respondent, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation) et al., Appellants.

Frank Karr, E. E. Morris, C. W. Cornell and O. O. Collins for Appellants.

W. I. Gilbert, E. E. Bennett, Malcolm Davis, Edward C. Renwick and C. W. Dooling, as *Amici Curiae* on Behalf of Appellants.

Fred F. Kelley and Vincent J. Blumberg for Respondent.

THE COURT.—The defendants appeal from a judgment entered against them on the verdict of a jury fixing damages for the death of the plaintiff's husband. Appellants contend that the evidence shows the deceased to have been guilty of negligence as a matter of law.

Deceased was killed in a crossing accident on the line of the defendant railway near Glendora. At this point the defendant corporation maintains a single-track electric railway, constructed in the same manner as a steam railway in open country. The two-car train which struck the truck which the deceased was driving, was running west and the deceased was traveling on a private road from north to south, crossing the railway track at a right angle. The train was approaching him from the side of the truck on which he was sitting, and the principal controversy arises over the view which deceased had of the tracks to the east, and whether or not he looked for approaching trains at the times and places required of him.

The view of one approaching the tracks from the north was obstructed by the trees of an orange grove which at the time of the accident lay on the north of the track and on each side of the private road. It was stipulated that at a point 10 feet north of the north rail of the railway track there was an unobstructed view of a train approaching from the east for 1600 feet; at 12 feet, a train could be seen for 500 feet to the east; at 15 feet, for 413 feet to the east; and at 20 feet the vision in that regard was reduced to 288 feet. The record shows that the deceased at the time of the accident was employed at the orange grove. He had used the crossing two or three times a day for a number of months, and there is testimony that he had stated at various times that it was a dangerous one. The accident occurred about 9 o'clock in the morning of a clear day.

As the grounds for its position that the evidence shows the deceased to have been guilty of contributory negligence as a matter of law, appellants present what they assert was the uncontradicted evidence of plaintiff's witness that the deceased stopped the truck to look for approaching cars at only one point, from which there was a view of 300 feet to the east. They insist that as the admitted facts show that at a

point 10 feet from the rail the train could have been seen for 1600 feet, deceased could not choose a point where such a limited view could be obtained, knowing, as he did, the dangerous character of the crossing and that trains passed at a speed of 50 or 60 miles per hour,—also that as the deceased was only 6 feet from the front of the truck as he sat in the driver's seat, and the overhang of the train was 26 inches, it is urged that it must be apparent that he could have stopped his truck clear of the track at the point where a train was visible for 1600 feet to the east.

But at the outset, particular attention should be directed to certain additional facts that appear in the testimony received at the trial and which, for the purpose solely of passing upon the question of contributory negligence of the driver of the truck "as a matter of law", must be accepted as literally true and unimpeachable: Immediately before the accident occurred, the car of the defendant corporation was running on a downhill grade of five per cent at a rate of 70 miles per hour, with "all brakes set". No whistle was sounded on the train as it approached the crossing. After the accident, the car "skidded" for a distance of over 1,000 feet. Although the body of the car projected 2 feet, 2 inches, beyond the rails of the track upon which the car was running, how much further, if any, than 2 feet, 2 inches, the body of the car projected by reason of swaying as it ran on a five per cent down grade at a rate of 70 miles per hour, is not disclosed by the evidence. The body of the truck with which the car collided was 16 feet long; but whether it was loaded or empty, does not appear within the evidence adduced. The outside branches of the trees of the orange grove nearest the railroad track were "a little over eleven feet—nearly twelve feet" from the north rail of the railroad track. Before attempting to cross the railroad track, the driver of the truck caused it to come to a complete stop "between ten and fifteen feet", or, as otherwise testified, "between ten and twelve feet" from the north rail of the railroad track, at which point both the driver and his passenger looked and listened for an approaching car. Although the passenger testified that at that point (wherever in fact it was) "you could see around—just about 300 feet", that, of course, was only an estimate. Also that as hereinbefore indicated, by stipulation of counsel, even if the truck was stopped at the *maximum* distance from the track, to wit, 15 feet, as testified by the witness, a car on the

railroad track could have been seen by the driver of the truck at a distance of 413 feet from the place where the truck was then located. Thereafter the truck proceeded at a rate of speed of between 3 and 7 miles per hour in an attempt of its driver to cross the railroad track.

Since it is obvious that at exactly what point the truck was stopped is indeterminable, and that had it stopped at a greater distance than 12 feet from the railroad track the outer branches of the orange trees to some extent would have obscured the view of the railroad track, and since within the testimony the point of stoppage was either between 10 and 15 feet, or between 10 and 12 feet, it is fair to assume that the actual point where the truck was stopped was at no greater distance from the north rail of the railroad track than 12 feet; at which point, according to the evidence (by stipulation), a view of the track could have been had for a distance of 500 feet. Assuming that 12 feet is approximately correct, —because of the fact that the driver's seat on the truck was 6 feet from the front of the truck, it thus is clear that at that point the front of the truck was within 6 feet of the north rail of the track. However, since the "overhang" of the car of the defendant corporation was 2 feet, 2 inches,—even allowing nothing for the sway (if any) of the car running at a rate of 70 miles per hour on a down grade of five per cent, if the truck had remained stationary at the point where it had stopped, it would have missed being struck by a passing car by a distance of 3 feet 10 inches only; and if the truck had actually stopped at what might be termed the "perfect" distance of 10 feet from the track, its clearance from a passing car would have been less than 2 feet, or exactly 1 foot and 10 inches.

█ The appellants direct attention to the fact that the care required of one about to cross a railroad track has been declared many times by the appellate courts of this state, and in that regard refer particularly to the leading case of *Griffin* v. *San Pedro, Los Angeles & Salt Lake R. R. Co.*, 170 Cal. 772 [151 Pac. 282, L. R. A. 1916A, 842], wherein it is stated that "a person approaching a railway track, which is itself a warning of danger, must take advantage of every reasonable opportunity to look and listen". They then say that while still at a point of safety from passing trains, the driver of the truck could have seen a car approaching as far away as 1600 feet; and that if with full knowledge of the dangerous

character of the crossing, which the evidence shows the deceased had, he chose a point to look for trains where he could see them for only 300 feet, he thereby neglected the plainest precautions for his own safety. In other words, for the reason that "a person approaching a railway track . . . must take advantage of every reasonable opportunity to look and listen" (since it was *possible* for the driver of the truck to have stopped it at a point, to wit, 10 feet from the north rail of the railroad track, where the train was visible for 1600 feet to the east), that because of the fact that the driver of the truck stopped it between 10 and 15 feet (or about 12 feet) from the north rail of the railroad track, where he could see for a distance of only 500 feet,—the said driver was guilty of contributory negligence as a matter of law.

It is thus apparent that, in effect, the controlling principle of law for which the appellants contend, is that in order that a plaintiff in an action may escape conviction of contributory negligence in a situation such as is presented by the facts herein, it must appear not only that he stopped his automobile at a point where he had a *reasonable* view of the railroad track, but that as well it must appear that such point was the *best possible place available for that purpose.* But if it may be assumed that the truck was stopped at a distance of 12 feet from the north rail of the railroad track, at which point the driver could have seen up the track for a distance of 500 feet, at which time and place no car was visible; and that thereafter, the driver consumed an appreciable length of time in looking in the opposite direction for a possibly approaching car, as well as in starting the truck and later in attempting to cross the railroad track, it would seem reasonable that from such facts it well may be argued that contributory negligence, as a matter of law, may not be properly attributed to the driver of the truck.

Not only by the provisions of the statute applicable thereto, but as well by numerous judicial constructions thereof, all the care that was or could have been required of the driver of the truck was *ordinary* care, or such care as would have been exercised by a reasonably prudent person in circumstances similar to those in which the driver of the truck was placed.

It should be remembered that on consideration of the question of whether a plaintiff should be adjudged to have been guilty of contributory negligence as a matter of law, the evidence adduced in his behalf should be viewed in its most

favorable light to the cause of the plaintiff; and that when so viewed, if it appear that one reasonable person might differ from another or others as to whether the plaintiff had exercised the care and prudence in the premises that would have been exercised by a reasonably prudent person in similar circumstances, the inevitable legal result should be that the plaintiff could not be held to have failed to use ordinary care. General observation in a situation such as 'is here involved leads to the conclusion that of the thousands of drivers of automobiles, comparatively few exercise the degree of prudence that was exercised by the driver of the truck in the instant case. But without reference to such obvious fact, as hereinbefore has been suggested, the solution of the question of whether due care was exercised should be reached by a consideration, not of what a *very* careful and cautious person would have done, but rather by a determination of whether what the driver of the truck did in the premises was comparatively something less than that which a person using ordinary care for his own safety and protection from injury would have done under the same or similar circumstances.

In the instant case, the following suggestive questions may not be amiss: How was the driver of the truck to learn of the location of the exact point at which he might see an approaching car at the greatest possible distance from the crossing? Must he have been able to properly operate (and actually operate) a set of surveyor's instruments for that purpose? And in some manner having ascertained that exactly 10 feet from the north rail of the railroad track was the most available and best possible point, was he obliged to carry with him a tape line, or some other "gadget" for the measure of distances, in order to correctly mark the spot? Was he required thereafter, without variation of the fraction of an inch (disregarding his possible lack of great skill in that regard) to stop his truck at exactly 10 feet from the north rail of the railroad track, or for his failure in that regard suffer the consequences of his imprudent act? Furthermore, if the driver of the truck knew that 10 feet from the north rail of the railroad track was the proper distance therefrom at which the truck should be stopped in order to obtain the best possible view of the railroad track, should the fact not be taken into consideration that in forming an *estimate* of that distance reasonable men might differ greatly one from the other or others? Again, let it be supposed that after having stopped

his truck, the driver thereof realized that he had failed to stop it at a distance of exactly 10 feet from the north rail of the railroad track; was he obliged to try again and again until his stop was absolutely accurate? Or, if in his attempt to stop his truck at the 10-foot point, he overshot the mark and stopped at a point 8 feet or less from the track, in which position the truck would have been struck by a passing car, in order that he be not adjudged guilty of contributory negligence as a matter of law, should he have backed his truck to the 10-foot spot?

It is apparent that in effect the rule suggested by the appellants would require not *ordinary* care on the part of a driver of an automobile, but that the application of such a rule would demand *extraordinary* or the *highest* degree of care on his part. That such is not the law appears in the negligence case of *Alloggi* v. *Southern Pacific Co.*, 37 Cal. App. 72, 77 [173 Pac. 1117], where it is said:

"The court did not err in refusing to instruct the jury that it was the duty of the plaintiff to stop, look, and listen at the most advantageous place. He was not required to look at the *most* advantageous place, for this would be putting upon him the burden of not only knowing the most advantageous point, but also of exercising the highest degree of care, while all that was required of him was ordinary care."

With reference to contributory negligence, in the case of *Seller* v. *Market Street Ry.*, 139 Cal. 268, 271 [72 Pac. 1006], in part it was said: " . . . If the conceded facts are such that reasonable minds might differ upon the question as to whether or not one was negligent, the question is one of fact for the jury. . . . "

And in *Herbert* v. *Southern Pacific Co.*, 121 Cal. 227, 229 [53 Pac. 651], the rule was thus expressed:

"If but one conclusion can reasonably be reached from the evidence, it is a question of law for the court; but if one sensible and impartial man might decide that the plaintiff had exercised ordinary care, and another equally sensible and impartial man that he had not exercised such care, it must be left to the jury. Our ideas as to what would be proper care vary according to temperament, knowledge and experience. A party should not be held to the peculiar notions of the judge as to what would be ordinary care. That only can be regarded as a standard or rule which would be recognized or

enforced by all learned and conscientious judges, or could be formulated into a rule. In the nature of things no such common standard can be reached in cases of negligence, where reasonable men can reach opposite conclusions upon the facts.''

█ The presumption is that all men are ordinarily careful in the matter of protecting themselves against possible injury to their persons. If that presumption here obtains, even a casual observer of the actions of motorists at grade crossings of public highways over railroad tracks will convince even the most skeptical of men that not one driver of an automobile in a dozen exerts the care and vigilance for his safety that was exercised by the driver of the truck in the instant case. Nor, although the driver of the truck actually did ''stop, look and listen'', does the written law of this state (or probably of any state) require any such particular care. In the facts of the instant case the only proper function of this court is to determine, as a matter of law, whether in the premises the driver of the truck conducted himself with that degree of care and circumspection as would the average adult human under the same or similar circumstances. But, for its solution, primarily that problem, as a matter of fact, was one with which the jury was charged; and in the absence herein of facts which unerringly would indicate that as a matter of law the driver of the truck was guilty of contributory negligence, or that the jury was swayed by fraud practiced upon it, or that it was otherwise improperly influenced in arriving at its conclusion, this court is legally powerless to interfere. This court is unable to agree with the suggestion in substance presented by appellants to the effect that the driver of the truck was so palpably negligent that reasonable minds could not differ one from the other on the question as to whether he had acted as a reasonably prudent person would have acted in the same or similar circumstances.

█ Regarding the question as to whether the defendants were guilty of negligence,—although with respect particularly to the rate of speed at which the car of the defendant corporation was traveling, as well as to whether a whistle was properly or at all sounded on the train, the evidence adduced by the respective parties to the action was in conflict, one with the other,—it is clear that the jury had the right to conclude (as apparently it did), not only against the contentions made by the defendants in that regard, but also, that,

considering all the circumstances connected with the happening of the accident, the negligence of the defendants had been established by a preponderance of the evidence.

No error was committed by the trial court either in giving instructions to the jury that were requested by plaintiff, or in refusing to give to the jury certain instructions that were requested by the defendants.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 18, 1935, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 15, 1935.

Seawell, J., and Shenk, J., voted for a hearing.